## City of Pineville, et al. v. Moore, et al.

(Decided February 1, 1921.)

### Appeal from Bell Circuit Court.

1. Appeal and Error—Right of Review.—In the absence of an appeal therefrom, that portion of a judgment refusing an injunction against one of the defendants is not subject to review.

2. Mandamus—Mandatory Injunction—Grounds—Persons Entitled to Relief.—An action for mandamus and mandatory injunction must be prosecuted by the proper public officer when the right or duty in question affects the state in its sovereign capacity as distinguished from the people at large, but if the general public

as distinguished from the state in its sovereign capacity is affected, any citizen may sue out the writ or obtain the mandatory injunction.

3. Mandamus—Mandatory Injunction—Grounds—Persons Entitled to Relief.—A citizen, taxpayer and patron of the colored schools of a city, who sues on his own behalf and for the benefit of all other colored people who are bona fide residents of the city, may bring a suit for the purpose of obtaining a mandatory injunction compelling the members of the board of council to perform their statutory duty with reference to the levy of taxes imposed by the board of education in cities of the fourth class.

4. Schools and School Districts—Constitutional Law—Right of Fourth Class Cities to Tax Property of White Citizens for the Support of Colored Schools.—Section 187 of the Constitution, providing that in distributing the school fund no distinction shall be made on account of race or color, and separate schools for white and colored children shall be maintained, does not forbid the imposition of a tax upon the property of white citizens for the support of colored schools.

5. Schools and School Districts—Right of Board of Education in Fourth Class Cities to Levy Annual Taxes for Erection of School Buildings.—Sections 19 and 20, chapter 14, Acts 1920, construed and held to authorize boards of education in cities of the fourth class to levy annual taxes for the purpose of erecting school buildings.

6. Schools and School Districts—Duty of Board of Education of Fourth Class Cities to Estimate the Amount of Money to be Used to Defray the Expenses of Maintaining the Schools, etc., and Enter the Same Upon the Minute Book of the Board.—The duty of boards of education of fourth class cities under section 21, chapter 14, Acts 1920, approximately to ascertain the amount of money which would be necessary to be used to defray the expenses of maintaining the schools, including a sinking fund, repairs and improvements of buildings, and any liquidation of liabilities falling due within the current fiscal year, etc., and to enter the same upon the minute book of the board, is mandatory, and must be done before the board is empowered to make the levy or to require the general council or fiscal court to include the taxes so levied in their regular tax bills.

7. Schools and School Districts.—Time for Board of Education of Fourth Class Cities to Certify to General Council Resolution Levying School Taxes.—Under section 19, chapter 14, Acts 1920, providing that the board of education of fourth class cities shall, within thirty days prior to the time for the levy to be made in the charter of cities of the fourth class, approximately ascertain the amount of money which will be necessary to be used, etc., and authorizing and directing it to pass a resolution imposing taxes for school purposes, etc., and directing it forthwith to certify the resolution to the general council, the time for making the levy not being otherwise definitely fixed, the board of education

'should certify the resolution to the general council within thirty days prior to June 1st, the time the clerk should begin the work of making out the tax bills, since sections 3535, 3536, 3542 and 3543, Kentucky Statutes, contemplate that the general council shall make the levy before that time.

8. Schools and School Districts—Cities of Fourth Class—Duty of Board of Education to Certify Resolution Levying Taxes to General Council Within Thirty Days Prior to the Time Prescribed by the Charter for the Levy to be Made by the General Council.—The duty of the board of education of a city of the fourth class to certify to the general council the resolution levying taxes for school purposes within thirty days prior to June 1st of each year is mandatory in view of the concluding provision of section 19 to the effect that if in any year the board shall fail to pass the resolution and make the certificate and request as aforesaid, the general council or its board of commissioners and fiscal court shall make a levy for schools that shall be the same as it was the year before, and a resolution not certified until July 20th comes too late.

9. Mandamus—Mandatory Injunction—Schools and School Districts —Cities of the Fourth Class—Petition—Sufficiency.—A petition asking for a mandatory injunction against the members of the board of council, requiring them to levy taxes imposed by resolution of the board of education in a fourth class city, was defective in that it never alleged that the general council had failed or refused to comply with the resolution.

E. R. BAKER for appellants.

CHARLES A. WOOD and JAMES H. JEFFERIES for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

John Moore, a citizen, taxpayer and a patron of the colored schools of Pineville, brought suit against the city of Pineville, the members of its board of council, and the board of education and its members, and asked for a mandatory injunction compelling the defendants "to take the necessary steps to provide for the education of all colored school children entitled thereto, and a suitable building for that purpose, and otherwise provide for the same, the same benefits as provided for white children." Subsequently an amended petition was filed, stating in substance that at a meeting of the board of education of the city held on July 20, 1920, the board adopted a resolution imposing and levying for school purposes for the year 1920 a tax of $1.50 per $100.00 on all real and personal property subject to taxation in the city of Pineville, and a poll tax of the amount of $2.00 on each male inhabitant of said city over 21 years

of age, and in addition thereto, a tax of 40c upon each
$100.00 of taxable property for sinking fund purposes
to meet and pay off the bonded indebtedness of the
school district, and that said resolution was regularly
certified and presented to the board of council. The
amended petition concluded with a prayer for a manda-
tory injunction compelling the city of Pineville and the
members of the board of council to meet and carry into
effect said resolution. The special and general de-
murrers interposed by the defendants were overruled,
and the defendants having declined to plead further, the
prayer for an injunction against the members of the
board of education was denied, but granted as to the
members of the board of council, who were directed to
meet at once and comply with the resolution of the board
of education by levying the tax therein imposed and in-
cluding it in the regular tax bills of the city. The city
and the members of its board of council appeal.

The suit is based on an act defining boundaries for
school districts embracing cities of the fourth class, and
providing systems of schools in such districts, etc., ap-
proved March 13, 1920, and constituting chapter 14,
Acts 1920. The act places the control of the schools in
the fourth class cities in one board of education, except
in certain cases, and it is admitted that Pineville does
not come within any of the exceptions. Section 18 of the
act provides that the colored schools or children shall be
entitled to the same benefits, be governed by the same
rules and regulations, and be subject to the same restric-
tions as the schools provided for white children. Section
19 of said act is in part as follows:

"Said board of education shall, within thirty days
prior to the time prescribed for the levy to be made in
the charter of cities of the fourth class, approximately
ascertain the amount of money which will be necessary
to be used to defray the expenses of maintaining the
schools, including a sinking fund, repairs and improve-
ments of buildings, and any liquidation of liabilities fall-
ing due during the current fiscal year, and conducting
the business intrusted to the board during the current
fiscal year over and above the amount due it by the state
as provided in section 21, and shall enter the same upon
the minute book of the board; and power and authority
is hereby conferred upon such board of education to
impose and levy *ad valorem* taxes upon all real and per-

sonal property in said city or district subject to and assessed for taxation for city or county purposes not exceeding a rate of one dollar and fifty cents upon each $100.00 of taxable property, and also a poll tax on each male inhabitant over twenty-one years of age within said district of not exceeding $2.00, and shall also levy a sufficient amount to provide for sinking fund purposes for the fiscal year, and the taxes accruing from so much of said levy as is made for sinking fund purposes shall be, by said board of education, at once irrevocably set aside and used for that purpose and not otherwise, and said sinking fund as above provided shall include the sinking fund for the entire outstanding bonded indebtedness for said board.

"The said board of education shall adopt a resolution imposing and levying an *ad valorem* tax upon all the real and personal property subject to taxation and assessed by said city or county for general purposes at such rate, but not exceeding one dollar and fifty cents on the $100.00 valuation of said property, and a poll tax not exceeding the amount of $2.00 on each male inhabitant over twenty-one years of age in said district as shall, in the opinion of said board, be necessary to produce in that year the total sum necessary to be raised to support and maintain the public schools of said district less the estimated sum to be received from the state common school fund and shall also levy a tax for sinking fund purposes, and said resolution shall be forthwith certified under the seal of the city board of education to the general council or the board of commissioners of said city, and where such district includes territory outside of such city to the fiscal court of said county, and said levy at the rate so fixed and certified shall be, by said general council or board of commissioners or the said fiscal court, added to and included in the regular tax bills of the city containing the ordinary levy, and said city shall, by proper ordinance, make such levy as also the said fiscal court shall make such levy and it shall be collected with the same by the same officers and in the same manner and at the same time as ordinary taxes for said city or county are collected by the collecting officers of the city."

Section 19 concludes as follows:

"If in any year the board shall fail to pass the resolution and make the certificate and request as aforesaid, the general council or its board of commissioners

and fiscal court shall make a levy for schools that shall be the same as it was the year before."

There being no appeal therefrom, that portion of the judgment refusing an injunction against the board of education is not subject to review.

Plaintiff's right to sue was raised by special demurrer. It appears from the petition not only that plaintiff was a citizen and taxpayer of the city, but that he was a colored person with two children of school age entitled to attend the colored school, and that he brought the suit in his own behalf and for the benefit of all other colored people who were *bona fide* residents of the city. Under the well established rule in this state, an action for mandamus or mandatory injunction must be prosecuted by the proper public officer when the right or duty in question affects the state in its sovereign capacity as distinguished from the people at large, but, if the general public as distinguished from the state in its sovereign capacity is affected, any citizen may sue out the writ or obtain a mandatory injunction. Gay v. Haggard, 133 Ky. 425, 118 S. W. 299.

One of the questions raised is that the Constitution forbids the imposition of a tax upon the property of white citizens for the support of the colored schools. There is no merit in this contention. Section 187 of the Constitution provides: "In distributing the school fund, no distinction shall be made on account of race or color, and separate schools for white and colored children shall be maintained." It is true that the legislature has, in certain instances, provided that local school taxes shall be levied upon the property of white citizens for the support of the white schools and on the property of colored citizens only for the support of colored schools, but there is nothing in the constitutional provision requiring this to be done, or depriving the legislature of the power to provide that local taxes, both for white and colored schools, may be levied upon all the property of the city or district, as is the case in many municipalities.

Another contention is that section 19, *supra,* authorizes the board of education to levy annual taxes solely for the purpose of repairing and improving the existing buildings, and not for the purpose of erecting new buildings. Any doubt on this question arising from the language of section 19 is certainly removed by section 20,

which authorizes the issuance of bonds for the purpose of acquiring sites, and erecting school houses in the event that "the annual funds raised from other sources are not sufficient to accomplish said purpose or purposes." We therefore conclude that the board of educaiton may levy annual taxes for the purpose of erecting school buildings.

It will be observed that section 19 makes it the duty of the board of education, within thirty days prior to the time for the levy to be made in the charter of cities of the fourth class, approximately to ascertain the amount of money which would be necessary to be used to defray the expenses of maintaining the schools, including a sinking fund, repairs and improvements of buildings, and any liquidation of liabilities falling due within the current fiscal year, and conducting the business intrusted to the board during the current fiscal year over and above the amount due it by the state as provided in section 21, and to enter the same upon the minute book of the board. While the act does not require the estimate so made to be certified to the general council as was formerly the case, it seems to us that the act imposes upon the board the mandatory duty to make the estimate and enter it upon its minute book. The manifest purpose of the act was to let the people know how much money would have to be raised by taxation to support the schools, and to fix in a general way the purposes for which the money so raised should be expended. Otherwise, the board, without taking any official action showing the necessity for such a levy, and without making any apportionment, could always levy the full amount authorized by the act and thereafter devote it to purposes other than those contemplated when the levy was made. We therefore conclude that before the board is empowered to make the levy, or to require the general council or fiscal court to include taxes so levied in their regular tax bills, it should make the estimate required by the act and enter the same upon its minute book.

Another question to be determined is when the levy made by the board shall be certified to the general council. The act plainly contemplates that this should be done within thirty days prior to the time prescribed by the charter for the levy to be made by the general council. All property is valued as of April 1st, section 3535, Kentucky Statutes, and the taxes are due on July 1st,

section 3536, Kentucky Statutes. The supervisors meet on the Thursday following the second Monday in May in each year, and may adjourn from day to day until their work is completed, not exceeding two weeks. Section 3542, Kentucky Statutes. As soon as practicable after the supervisors have corrected the assessment lists, they must be returned to the clerk, who, from them, must make out the tax bills for the year and turn them over to the city collector or treasurer, sec. 3543, Kentucky Statutes, who must advertise before the first day of July that the taxes are due. Section 3544, Kentucky Statutes. It will thus be seen that the precise time for making the levy is not prescribed by the charter. Clearly, however, it was the purpose of the legislature to provide that the levy should be made before the clerk is required to begin the work of making out the tax bills. The act contemplates that he should begin this work about June 1st in each year, and we conclude that the time for the general council to make the levy must necessarily be before that date. Therefore, the board of education should make its levy and certify the resolution to the board of council within thirty days prior to that time. Furthermore, this provision of the statute is mandatory, in view of the concluding provision of section 19, *supra,* to the effect that if in any year the board shall fail to pass the resolution and make the certificate and request as aforesaid, the general council or its board of commissioners and fiscal court shall make a levy for schools that shall be the same as it was the year before. Here, the resolution of the board was not passed and certified to the general council until July 20th, or long after the taxes were due and payable under the law. This was too late, and the resolution not having been passed and the certificate and request made within the time prescribed, it then became the duty of the general council to make the levy for schools the same as it was for the year before.

The petition was also defective in that it never alleged that the general council had failed or refused to comply with the resolution of the board.

It follows that the demurrer interposed by the city and the members of the general council should have been sustained, and the injunction refused.

Judgment reversed and cause remanded for proceedings not inconsistent with this opinion.