CASE 39.—ACTION BY DAVID S. GAY AGAINST D. S. HAG-
    GARD, SUPERVISOR OF ROADS OF CLARK
    COUNTY.—April 21, 1909.

# Gay v. Haggard, Road Supervisor

Appeal from Clark Circuit Court.

J. M. BENTON, Circuit Judge.

Judgment for defendant, plaintiff appeals—Re-
versed.

1. Mandamus—Proceedings—Petition—A petition for a writ of
mandamus need not expressly ask for the issuance of the
writ; prayer for process being unnecessary under the Code.
2. Mandamus—Nature.—Under the Code the writ of mandamus
is a statutory writ, and is granted as a matter of right in a
proper case to the party aggrieved.
3. Mandamus—Proceedings—Motion for Writ—Notice.—Where
a petition for a writ of mandamus is filed, the ordinary sum-
mons is supplied by the notice of motion for the writ, as pro-
vided by Civ. Code Prac. Sec. 474, but the notice is unneces-
sary when the defendant voluntarily appears and demurs to
the petition.
4. Appeal and Error—Decisions Reviewable—Order Sustaining
Demurrer to Petition for Mandamus.—A ruling sustaining a
demurrer to a petition for a writ of mandamus, and dismiss-
ing the action before the making of a motion for the writ,
is a final order from which an appeal lies, though no notice
of motion for the writ was given as provided by Civ. Code
Prac. Sec. 474; the notice being unnecessary when defendant
appears.
5. Mandamus—Grounds—Persons Entitled to Relief.—An action
for mandamus must be prosecuted by the proper public offi-
cer when the right or duty in question affects the State in
its sovereign capacity as distinguished from the people at
large, but, if the general public, as distinguished from the
State in its sovereign capacity is affected, any citizen may
sue out the writ.
6. Mandamus—Grounds—Persons Entitled to Relief.—A citizen
and taxpayer suing on his own behalf and on behalf of others
may sue out a writ of mandamus to compel a road supervisor
to discharge his statutory duty to let work on public roads at
competitive bidding, the duty being one affecting the gen-
eral public, and it is not necessary that the plaintiff should
show a special interest, or that the public will sustain dam-
age if the act is not done.

7.  Mandamus—Proceedings—Petition.—A petition for a writ of
    mandamus to compel a road supervisor to let work on pub-
    lic roads at competitive bidding which alleges that defendant
    is the supervisor of the county, appointed, qualified and
    acting, and has let the work on all the roads by pri-
    vate contract, instead of advertising for bids, sufficiently
    charges that the county works its roads by taxation, as
    those acts can occur only when that method is employed.
8.  Highways—Improvement and Repair—Contracts—Competitive
    Bidding on Work.—Ky. St. 1894, Sec. 4315, as amended by
    Acts 1906, p. 431, c. 118, and Acts 1908, p. 107, c. 42, requiring
    the letting of work on public roads at competitive bidding
    and providing that the supervisor, with the consent of the
    county judge, may designate certain roads or parts of roads
    for private contracting, does not authorize the supervisor,
    with the consent of the county judge, to exempt all the
    roads of the county from the competitive system.

BECKNER & BECKNER and JOUETT & JOUETT for appellant.

PENDLETON, BUSH & BUSH and J. SMITH HAYS for appellee.

OPINION OF THE COURT BY JUDGE O'REAR—Reversing.

Appellant, a citizen and taxpayer of Clark county,
brought this suit on his own behalf, and the behalf
of all other taxpayers of Clark county, against ap-
pellee Haggard, as supervisor of roads of Clark
county, for mandamus, requiring the appellee to com-
ply with the statute concerning the letting of work on
the public roads of the county at competitive bidding,
instead of private contract. It is charged that the
latter course was being pursued as to all the roads
of Clark county. A general demurrer was sustained
to the petition, and the action was dismissed. We
are advised in briefs of counsel that the learned cir-
cuit judge based his judgment upon a construction
of the statute, which will presently be adverted to;
but appellee here contends that there are certain
technical defects in the petition which alone are suffi-
cient to sustain the lower court's ruling. He also con-

tends that the construction of the statute, which seems to have been the real purpose of the suit, as applied by the court, is correct. The petition does not expressly ask for the issuance of the writ of mandamus, although after stating the alleged dereliction of the defendant, a public officer, it asks that he be compelled to comply with the law, and be required to advertise the work on the roads to be let, and to let it, at public competitive bidding.

While at the common law prayer for process was the approved practice, under our Code that is not necessary. Upon the allegation of sufficient facts, process which is suitable to the relief demanded may be issued by the clerk where the law allows him to issue it, or may be awarded by the court. There was not a notice by the plaintiff of the motion for mandamus in this case. Appellee insists that, until there was such notice, the action of the trial court in ruling upon the demurrer to the petition was not a final order, although the petition was dismissed by the judgment; that the Code contemplates in this proceeding that the granting or refusing the writ of mandamus is the final order of the case; and that neither can be done until there is a motion for the mandamus. Under our Code of Practice the writ of mandamus is a statutory writ, and is granted as a matter of right in a proper case to a party aggrieved. Maddox v. Graham & Knox, 2 Metc. 56. The trial is summary. Section 475, Civ. Code Prac. By Section 474, Civ. Code Prac., it is provided that, except in writs used by the court in enforcing its judgments, the writ of mandamus shall be obtained by motion as provided in title 10, c. 5, Code (applying to the trial of motions upon notice), and that "the applicant shall file a petition wherein he shall state

the cause and ground of his application before giving notice of his motion; to which the party against whom the mandamus is sought shall file a demurrer or answer, at or before the time fixed for making the motion.'' Ordinarily a suit is begun by filing the petition in the clerk's office, and causing a summons to be issued upon it, returnable to the next term or within so many days after service. But in this proceeding the summons is supplied by the notice! The petition can be filed at any time before the notice, and the court may after the 10 days provided in the notice, or after the appearance of the defendant, summarily try the motion. When the defendant appeared and filed his demurrer, the office of the notice was dispensed with. It was no longer necessary to notify him to do what he had already done, or to apprise him of a purpose which he was then combating in court. Before the motion for the writ was made, the court held the petition to be insufficient to support such motion, and dismissed the plaintiff from court. That was an effectual denial of the writ, and is a final order in the case, from which an appeal lies.

The petition does not allege that appellant will sustain special damage, or that anybody will sustain damage by reason of the alleged conduct or failure of the defendant to comply with the statute as to letting the work on the roads. There is no express provision of the statute in this State making it the duty of any public officer to prosecute actions for mandamus against derelict road supervisors. The duties of the latter officer appertain to a subject that directly concerns the public at large—the maintenance of the public roads of the counties. It affects them not only in their convenience, but as taxpayers.

The rule of practice concerning who may prosecute the suit is well stated in 26 Cyc. 401, thus: ''The true distinction seems to be that, where the right or duty in question affects the State in its sovereign capacity as distinguished from the people at large, the proceedings must be instituted by the proper public officer, but if the general public as distinguished from the State in its sovereign capacity is affected, any member of the State may sue out the writ.'' Such was the practice applied and approved in the case of Leslie County v. Wooten, 115 Ky. 850, 75 S. W. 208, 25 R. 217. The principle in another aspect is more frequently encountered in cases where one citizen and taxpayer on behalf of others of the class brings an action to restrain the levy of a tax, or other excessive ministerial act. The cases are numerous and familiar. The right of a single taxpayer to maintain such an action is no longer in doubt. It would seem to follow that where a ministerial act was required by law to be done, which if done would inure to the benefit of the public, the tardy official might be set in motion and compelled to act by a suit by one of the public affected, suing on his own and on the behalf of the others. Nor is it necessary that the plaintiff should show a special interest to be affected by the act. The reason it is public is because all the public are equally affected by it, at least theoretically; and, if no one of the public could maintain the suit, none less than all could, which would be practically a denial of the right to sue, for it is scarcely possible that all the citizens of a county or other territory could be got to act together in any matter. Nor do we think it necessary to allege or to show that the public will sustain damage if the act is not done. By the en-

actment of a statute on behalf of the public creating an office, and providing an incumbent to discharge certain public functions, the Legislature has declared that the act is one beneficial to the public. That phase of the question is not issuable. The public pay the officer for his services. They pay for the work done upon the roads. It will not lie in the official's mouth to say that his performance of a statutory duty is not a matter of concern to the public, or that his neglect of it will not entail any damage upon the public. Nor can he ask that the public be relegated to criminal prosecutions for redress. The public needs roads, not fines. The fines are only one method of enforcing the discharge of official duty to the public; but the availability of that means will not prevent the employment of another that will get what the public are entitled to, and what was the purpose of the legislation in their behalf in that matter.

The petition in this case does not allege that Clark county works its road by taxation. It is argued by appellee that, unless the roads are worked by taxation, there is no authority for the supervisor's letting the work at competitive bidding. Our statutes contemplate several different ways of maintaining our highways. One is the tollgate system, either by a private corporation or by the counties. Another is by the hands allotted to do the work, when overseers are appointed to superintendent the work. Another is by taxation or allotment of hands or both. In the last instances a supervisor may be appointed who, under the fiscal court, has charge of the work. There is no provision for the appointment of a supervisor of roads unless the county has elected to keep up its roads in whole or in part by taxation. Section 4313, Ky. St. So, when the petition alleges

that the defendant is the supervisor of roads of the county, appointed, qualified, and acting, and has let the work on all the roads of the county by private contract, instead of advertising for bids, we think it is sufficiently charged that the county was working its roads by taxation, as those acts could occur only if that method were being employed.

This brings us to the consideration of the statute, the construction of which is involved in this action. It is Section 4315, Ky. St., as amended by the act of 1906 (Acts 1906, p. 431, c. 118), and as amended also by the act of March 24, 1908, p. 107, c. 42. This suit was begun four days after the amendment of March, 1908, and, as there was an emergency clause to the act, it took immediate effect. Appellant was doubtless unaware of that amendment. However, the statute before the amendment and now is not changed so far as the principal feature of this case is concerned. Before the last amendment, it was provided: "In counties wherein roads are worked by taxation it shall be the duty of the supervisor at the court house door in his county, on the first Monday in March in each year after twenty days written or printed notice posted at each voting place in the county, to let out to the lowest and best bidder, who shall give bonds with surety, approved by the supervisor, the working and keeping in repair of all the roads of said county," etc. Under the statute as it now stands, it is provided that the supervisor "shall advertise for fifteen days in succession in some newspaper having general circulation in his county, or by written or printed notices posted up in three or more conspicuous places in each voting place in said county just preceding the regular monthly meeting of the fiscal court in April in each year, that the fiscal court

will receive the bids to let out to the lowest and best bidder the work of keeping up and repairing the public roads of the county for a specified term of not less than one nor more than four years." In the statute now, and as it was before the amendment, there is this proviso: "Provided, that for the purposes enumerated the fund raised under this act, and which may be otherwise raised by the levy court, shall be sufficient; and if not sufficient then it is to be used at such places and for such purposes as the supervisor under the general directions of said court may deem proper; and the court in giving such directions, shall have due regard for the public good, and to the wants of the different parts of the county. * * * The supervisor, with the consent of the county judge, may designate certain roads or parts of roads that are not to be let out as hereinbefore required, but which are to be worked and kept in repair either by special contract privately made, or by hands and teams hired by him, or by delinquent taxpayers, or by persons sentenced to labor, or who, by law, may be liable to work out fines imposed by juries or courts. But it shall be the duty of the supervisors to return to the county court, at its September term in each year, a descriptive list of such roads, which shall be recorded in its order book, and also to report in writing all hands and teams hired, and amounts paid for same, and the length of time and where employed; and also a similar report of the names of the delinquents who work, the places where, and the length of time and names of persons working out fines or sentences on roads. And it shall be the further duty of the supervisor to supervise said work, and to employ competent persons to oversee; and he may, if neces-

sary, put balls and chains on convicts to prevent their escape." The contention is, and it is said such was the view taken of the statute by the circuit court, that it was competent under this statute for the supervisor, with the concurrence of the county judge, to exempt all the roads of the county from the competitive system, and place the whole matter within the power of the supervisor to let the work by private contracts, and inasmuch as the petition in this case did not allege that some part or all of the roads of Clark county had not been designated by the supervisor with the consent of the county judge, to be let out by private contract, that the petition was defective. It is charged in the petition that the defendant as road supervisor "has continually refused, for both the year 1907 and the year 1908, and for all other times, to let out said roads to the lowest and best bidder, or to advertise for bids at all, though he has often been requested so to do by this plaintiff and other citizens during all the said time and has persisted in doing all of said work upon all the turnpikes and roads of the county by contracts privately made," etc. There is no room left for an exception. "All" excludes exceptions. Appellee construes the act in question as authorizing the supervisor, with the consent of the county judge, to abrogate the entire provision as to competitive bidding. It must be assumed in the present state of the record that the supervisor of the roads has designated all the roads of the county to be let out by private contract; and that the county judge has consented to it. Is that permissible under the statute?

The scheme evolved by the Legislature for maintaining the public roads of the State contemplates

putting the matter primarily in the hands of the va-
rious fiscal courts of the counties. In addition to this
manifest purpose evidenced by nearly every provision
of the statutes on the subject, Sec. 4306, Ky. St.,
reads: ''The fiscal court of each county shall have
general charge and supervision of the public roads
and bridges therein, and shall prescribe necessary
rules and regulations for repairing and keeping same
in order and for the proper management of roads
and bridges in said county under and subject to the
provisions of this act. The public roads shall be
maintained either by taxation or by hands allotted
to work thereon, or both, in the discretion of the fis-
cal courts of the respective counties as herein pro-
vided.'' We must take notice that, before the estab-
lishment of the fiscal courts, the county courts had a
larger authority than they now have in road matters;
that then and until within recent years many of the
counties of the State had their most important roads
in the hands of turnpike companies; that the old sys-
tem has given way to that of public ownership, the
turnpikes have been bought up by the counties, and
the tollgates abolished. Maintaining roads by taxation
prior to the abolition of the tollgate system was the
exception in this State. Under the existing condi-
tions, there have been a number of changes in the
statutes concerning the manner of keeping up the
public roads—all in a few years. This indicates that
the system is yet in an experimental stage. Inexperi-
ence in doging such work by the public authority, and
the opportunity for preying upon the public by con-
tractors and others, have combined to make the expe-
riments expensive ones in some localities. The repre-
sentatives in the Legislature have met here with
these experiences and problems fresh in mind. Nearly

every session sees some needed change in the road
laws to conserve the public welfare. In nearly all
of them there is the tendency to place the final re-
sponsibility with the elective magistracy, the fiscal
courts of the counties. This is particularly manifest
in the last amendment, which we are here called upon
to consider. There the letting of the work by com-
petitive bidding is adhered to; but it is deemed best
to take that feature of responsibility and opportunity
for favoritism and its well known evils from the
hands of the supervisors, and to lodge the power of
making the contracts with the fiscal courts. The
county judge sits as a member of the fiscal court.
The statutes are careful to place his authority in the
particular of contracting concerning county roads
subordinate and subject to the fiscal courts. The
supervisor has diminished authority. In view of this
trend of legislation, of the causes leading up to it, of
the well-known opportunity for abuse where com-
petitive bidding for public work is not resorted to, of
the fact that in nearly all public works of any mag-
nitude, national, state and municipal, the competi-
tive system has been found by actual experience to
be the best for the public and the taxpayers, is it
permissible to read this statute so as to render it
possible for the very officials designed to have a lim-
ited and special power, to enlarge their authority, to
oust that of the superior magistracy, and to return
to a system discarded by every progressive Common-
wealth and municipality? In construing a statute so
as to arrive at the legislative meaning, not only the
abuses intended to be corrected by it may be consid-
ered, but no part ought to be so construed as to an-
nul another part, if it can be avoided. Particularly

is this true as to allow a proviso to overturn the entire enactment to which it constitutes an exception. If the proviso means that the supervisor and county judge may designate all the roads of the county for private contracting, then all the careful enactments pertaining to public and competitive letting for the work are or may be set at naught. Always the aim and end of statutory construction is to effectuate the legislative purpose. The difficulty of expressing exact meaning in language so general as to be applicable to so many phases of a question as that which was the subject of this statute is recognized. The language here clearly imports the legislative will that the public roads when worked by money raised by general taxation shall be maintained in the highest state of utility that the money will buy, and the adoption as the most practicable plan of doing it, that of letting the work to the lowest and best bidder, to be ascertained in the manner which has been found most certainly to get the lowest and best bid. That last feature of the statute is its most prominent one next to that of affording good roads. It was recognized that instances would arise in each county where it would be impracticable to let a particular piece of the work in this manner. It might be too remote from the main work or too insignificant of itself, or be such that the labor of the particular neighborhood could best do it, and do it cheapest. That class of work, it was seen, ought not to be included in the general work required upon the more important systems of roads, because to do so might involve greater expense and more delays than if done by local labor or special contract. Then, too, it was seen that the delinquent taxes due for roads might in certain

work be used advantageously by the county, as well as the labor of prisoners required by judgments of courts to work out their sentences.  These matters were, therefore, made exceptions to the general and more comprehensive plan outlined by the statute— not with any purpose of doing away with the general plan, but to execute it as intended, letting the ex- cepted parts form the least important portion of the scheme.  The words of the exception, "certain roads or parts of roads," are inconsistent with the idea of so working all the roads.  It is more difficult tò de- fine than it is to perceive the limitation of the pro- viso.  It is believed by the court, as it doubtless was by the Legislature, that an attempt to define it more strictly than is done in the section would be to ham- per a fair execution of the statute.  If there should be a purpose to evade the aim of the statute, or to stretch it unduly, the good sense of any one con- cerned in the matter would doubtless serve to set the limitation so as to maintain the integrity of the general plan provided by the statute, and not defeat the fair object of the proviso.  It is enough to say here that the proviso does not mean that "certain roads or parts of roads" includes all roads, and does not allow a radical departure from the scheme of public competitive bidding by the statute.

Although the writ can not go to the extent prayed for, in so far as the defendant ought to act, it can go and he will be required to advertise the letting of the work for bids to be submitted to the fiscal court of the county in accordance with the directions of the statute, as amended by the act of March, 1908.  It is not suggested, nor do we apprehend that it is a fact, that appellee was actuated by other than an honest

purpose in his course, nor that the county judge in consenting to it had other thought than to conserve the public welfare in applying the road funds of the county. Their error was doubtless one of legal construction. And it may be possible that their plan in the particular instance was working better than the one the Legislature provided. But the question is not one of expediency. It is one of law. The question has not yet arisen whether appellee and the county judge have abused their official discretion, but is one of their power to do at all what it is charged they are doing, and of the right of the taxpayers to have the law executed as the Legislature has enacted it.

The judgment is reversed and cause remanded for proceedings consistent herewith.