Milton Z. **RUSSMAN** et al., Appellants,

v.

James B. **LUCKETT** et al., Appellees.

Court of Appeals of Kentucky.

June 8, 1965.

Rucker Todd, Louisville, Donald H. Wollett, New York City, for appellants; Brown, Ardery, Todd & Dudley, Louisville, Kaye, Scholer, Fierman, Hays & Handler, New York City, of counsel.

William S. Riley, Larry A. Carver, Cyril E. Shadowen, Dept. of Revenue, Frankfort, Ky., for appellees.

Hogan, Taylor, Denzer & Bennett, Louisville, for Board of Education, amicus curiae; E. P. Sawyer, Jefferson County Atty., Louisville, James O. Overby, Calloway County Atty., Murray, Sam F. Kibbey, Carter County Atty., Grayson, William A. Young, Franklin County Atty., Frankfort, of counsel.

Lucian L. Johnson, Louisville, amicus curiae for Kentucky Education Ass'n and Board of Education of Jefferson County, Ky.

Morton Holbrook, Owensboro, amicus curiae for Kentucky School Boards Ass'n; Sandidge, Holbrook, Craig & Hager, Owensboro, of counsel.

CLAY, Commissioner.

This suit, along with two others which have been considered together on this appeal, assails and seeks to rectify a tax assessment condition which has existed in Kentucky for many years by reason of the flagrant violation of section 172 of our Constitution and statutes implementing it. That section, and KRS 132.450(1) and KRS 133.150, require the assessment for taxation of all property (not exempted by the Constitution) at "its fair cash value". It is not only admitted but has become a matter of common knowledge that real estate and tangible personal property in Kentucky are assessed for tax purposes at varying percentages substantially less than 100 percent of fair cash value. The record indicates that in different taxing districts such property is assessed at percentages ranging from 33 to 12½ percent of such value. The statewide median real estate assessment ratio is approximately 27 percent.

It is perhaps unnecessary to detail the many serious problems that have arisen and will continue to arise by reason of the disparity in the tax burden upon taxpayers in different counties and taxing districts, and the extreme difficulties encountered by certain taxing authorities whose maximum rates are limited by the Constitution or statutes. It is apparent the situation is bad from almost any standpoint, is becoming worse, is unfair, is administratively inefficient, and gives tax Commissioners an unwarranted and arbitrary control of the tax base. More significant than all of these considerations, however, is the fact that the current method of assessment is in direct violation of clearly written mandatory laws. The perennial questions are raised in this case: Who

can challenge the status quo, and what should and can be done about it?

This suit was brought in the Franklin Circuit Court against the Commissioner and the Department of Revenue by residents of Louisville and Jefferson County who are respectively taxpayers, parents of school children, and students who attend school, for a declaration of rights and injunctive relief in the nature of mandamus.

McDevitt v. Luckett, Ky., 391 S.W.2d 700, was brought in the Franklin Circuit Court by taxpaying owners of intangible property against the Commissioner of Revenue and the tax commissioners of six counties, seeking a declaration of rights and raising the question of equal protection of law. In that action and the present one the trial court dismissed the complaints on the grounds that the plaintiffs could not maintain the actions because no justiciable controversy was presented, or other remedies were available, or the court should not interfere with the discretion of a member of the executive department of government.

The third suit, Miller v. Layne, Ky., 391 S.W.2d 701, was brought in the Jefferson Circuit Court by a resident property owner and taxpayer of Jefferson County against the tax commissioner of Jefferson County to have the latter removed from office under the provisions of KRS 132.370(3). The trial court dismissed that complaint on the ground the tax commissioner had not violated the law.

 Many procedural questions are raised in this suit and the McDevitt case. We have carefully considered them all but do not consider it necessary to detail the arguments. Suffice it to say that in our considered judgment a justiciable controversy is presented. There are no other adequate remedies which may be invoked by these plaintiffs and they have a right to bring these two actions and to obtain a declaration of rights. On the right to bring this suit, we refer the reader to the following authorities: Gay v. Haggard, 133 Ky. 425, 118 S.W. 299; Elam v. Salisbury, 180 Ky. 142, 202 S.W. 56; State Text-Book Commission v. Weathers, 184 Ky. 748, 213 S.W. 207.

Let us turn to the merits of the controversy. Section 172 of the Kentucky Constitution, in its entirety, provides:

"All property, not exempted from taxation by this Constitution, shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale; and any officer, or other person authorized to assess values for taxation, who shall commit any willful error in the performance of his duty, shall be deemed guilty of misfeasance, and upon conviction thereof shall forfeit his office, and be otherwise punished as may be provided by law."

KRS 132.440 requires the county tax commissioner to administer an oath to every person listing property in which the taxpayer certifies that "a fair cash value has been placed on all such property required to be valued".

KRS 132.450(1) provides in part: "Each county tax commissioner shall assess at its fair cash value all property which it is his duty to assess". (The remaining part of this subsection provides a method by which this shall be done.)

KRS 133.150 (as amended in 1964) contains the following provisions: "The Department of Revenue shall equalize each year the assessments of properties among the counties. * * * The Department of Revenue shall fix the assessment of all property at its fair cash value. When the property in any county, or any class of property in any county, is not assessed at its fair cash value, such assessment shall be increased or decreased to its fair cash value by fixing the percentage of increase or decrease necessary to effect the equalization."

KRS 131.020(1) designates the Commissioner of Revenue as head of the Department of Revenue and as its executive officer who shall have sole charge of the administration of the Department and shall perform all its functions.

Obviously the constitutional provision and the cited statutes exhibit a very specific purpose and a practical plan by which all property in the Commonwealth (not exempted by the Constitution) shall be assessed for taxing purposes *at its fair cash value*. Nothing in this record suggests any uncertainty, impracticability or inequity in either the purpose or the plan. We will consider briefly the three principal arguments made on behalf of the defendant, the Commissioner of Revenue.

It is said that the constitutional provision and the statutes (KRS 132.440, 132.-450 and 133.150) no longer have any legal effect because abrogated by a contrary custom or public policy of 75 years standing. That their mandatory directions have been flagrantly violated for a long time is unquestionable. In 1917 the United States Supreme Court in Louisville & Nashville Railroad Co. v. Greene, 244 U.S. 522, 37 S.Ct. 683, 61 L.Ed. 1291, recognized that for several years prior to 1913 the Kentucky assessing authorities had "intentionally, systematically and notoriously" assessed property far below its actual cash value. In recent years surveys have been made and the record shows that these violations have been continued and aggravated.

■ Our attention is called to no authority which would recognize an implied repeal of a constitutional provision because of its continued violation by public officials. The suggestion is appalling. Defendants cite Hill v. Smith, Iowa, 1 Morris 95 (1840), wherein the opinion states that it was contrary to Anglo-Saxon liberty "to revive, without notice, an obsolete statute" where there was long disuse and a contrary policy. The soundness of such a theory may well be questioned. In District of Columbia v.

John R. Thompson Co., 346 U.S. 100, 113, 73 S.Ct. 1007, 97 L.Ed. 1480, the United States Supreme Court held that failure of the executive branch to enforce a law does not result in its modification or repeal, even though there has been long continued disregard of a statute.

Defendants cite Adams v. Norris, 64 U.S. 353, 23 How. 353, 16 L.Ed. 539, and Poe v. Ullman, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989, but they do not support the proposition contended for.

In any event, we are dealing with our fundamental law. It is not outdated, or obsolete, or contrary to any policy we know of. The public has acquiesced in its nonobservance simply because private rights were not adversely affected and citizens heretofore have not been inclined to take the initiative to compel executive compliance. This law today is just as vital and enforceable as it was the day it was written into the Constitution.

Defendants next contend this Court has in effect nullified section 172 and the implementing statutes by substituting the test of "uniformity" in place of "fair cash value".

After the decision in Greene v. Louisville and Interurban Railroad Company, 244 U.S. 499, 37 S.Ct. 673, 61 L.Ed. 1280, this Court found itself in a dilemma. A taxpayer complained that his property was assessed at 100 percent while other taxpayers in the same taxing district were assessed at a lesser percentage. Under the first amendment to the Federal Constitution, which provided for equal protection of the law, it was obvious the taxpayer was unjustly discriminated against. There were only two ways to equalize the assessments. Either the assessments of other property owners must be raised to 100 percent or the complaining taxpayer's assessment lowered to the prevailing percentage. The court allowed the latter relief. This was done in Eminence Distillery Co. v. Henry County Board, 178 Ky. 811, 200 S.W. 347; McCracken Fiscal Court v. McFadden, 275 Ky. 819, 122 S.W.2d 761;

Prestonsburg Water Co. v. Prestonsburg Board, 279 Ky. 551, 131 S.W.2d 451; City of Louisville v. Martin, 284 Ky. 490, 144 S.W.2d 1034; City of Lexington v. Cooke, 309 Ky. 518, 218 S.W.2d 58; Luckett v. Tennessee Gas Transmission Company, Ky., 331 S.W.2d 879.

◼ In the Eminence Distillery Company case it was pointed out that in that particular proceeding the courts trying the case lacked the necessary powers[1] to remedy the inequality by increasing the assessment of other taxpayers, and in any event that would give the complaining taxpayer no relief at all. It was said that the "practical remedy" was to reduce the plaintiff's assessment. The recognition that the reduction in assessment was the only practical remedy was further explained in the Luckett case (last above cited). It was noted that the court's duty was to dispense justice in the individual case and that the only effective way to achieve equality for that particular plaintiff was to reduce his assessment to the general level. It is thus apparent that this Court has in no sense nullified section 172 of the Constitution or the implementing statutes. As a matter of fact, it has consistently recognized what the Constitution and the statutes require but until now has never had presented to it the kind of proceeding in which those provisions appropriately could be enforced.

Defendants rely particularly on Kentucky Finance Company v. McCord, Ky., 290 S.W. 2d 481. The taxpayer complained that his intangible personal property was assessed at 100 percent of fair cash value whereas the real estate in the county was assessed at approximately 30 percent. This Court refused to direct the reduction in assessment of the intangible personal property on the ground that the 1915 amendment to section 171 of the Kentucky Constitution, permitting *classification* of property for the purpose of tax *rates* (and exemptions), was a recognition that equality in tax "burden" was no longer required and effectively removed the requirement of equality of assessment. This was not an approval of the real property assessment but simply a determination that the taxpayer could not invoke the equality principle with respect to a different class of property. So this Court has not in any sense judicially construed section 172 or the implementing statutes out of existence.

◼ Defendants finally contend that, assuming this intolerable situation should somehow be rectified, this is not a proper case for the remedy of mandamus. It is said that this is a discretionary matter with the Commissioner of Revenue and courts will not undertake to control discretion. KRS 132.420(1) provides that county tax commissioners shall make assessments of all property in their counties, subject to the direction, instruction and supervision of the Department of Revenue. KRS 132.450 (1) provides this assessment shall be at "fair cash value". KRS 133.150 (as amended in 1964) provides in part:

"The Department of Revenue shall fix the assessment of all property at its fair cash value. When the property in any county, or any class of property in any county, is not assessed at its fair cash value, such assessment shall be increased or decreased to its fair cash value by fixing the percentage of increase or decrease necessary to effect the equalization."

KRS 131.020(1) (as amended in 1964) provides that the Department of Revenue shall be headed by the Commissioner of Revenue who shall be the executive officer and have sole charge of the administration of the Department. It is obvious the Constitution and the above statutes impose very specific duties upon county tax commissioners and the Commissioner of Revenue with respect to the assessment of all property at its fair cash value. There is nothing discretionary about these basic duties. While there may be optional methods of performance, it is absurd to suggest that the county

---

1. The use of the term "powers" seems inappropriate.

tax commissioners or the Commissioner of Revenue may comply with the law or ignore it in their discretion.

Not only is the relief demanded appropriate, but we know of no other remedy which would accomplish the purpose sought. See Gay v. Haggard, 133 Ky. 425, 118 S.W. 299; Elam v. Salisbury, 180 Ky. 142, 202 S.W. 56; State Text-Book Commission v. Weathers, 184 Ky. 748, 213 S.W. 207.

Other state courts have been confronted with a similar problem and have not hesitated to require public officials to comply with the law fixing the basis of tax assessments. Village of Ridgefield Park v. Bergen County Board of Taxation, 31 N.J. 420, 157 A.2d 829 (1960); Bettigole v. Assessors of Springfield, 343 Mass. 223, 178 N.E. 2d 10 (1961); McNayr v. State, Fla., 166 So.2d 142 (1964); State ex rel. Park Investment Co. v. Board of Tax Appeals, 175 Ohio St. 410, 195 N.E.2d 908 (1964); Pierce v. Green, 229 Iowa 22, 294 N.W. 237, 131 A.L.R. 335 (1940).

We conclude the plaintiffs not only have a right to prosecute this action but they, and those they represent, and the public, are entitled to relief. Perhaps the most difficult problem presented is the nature of that relief. We are aware of, and the record amply discloses, the far-reaching patterns affecting the whole field of taxation, and particularly tax rates, which have developed under the long continued illegal system. Readjusting them will present many problems and difficulties which cannot be solved overnight.

■ Immediate compliance with section 172 of the Constitution and the implementing statutes is an impossibility. Also it would be unjust, impractical, and perhaps ineffective from the standpoint of public interest, to permit or direct immediate action to be taken against the county tax commissioners to remove them from office, under the provisions of section 172 of the Kentucky Constitution or KRS 132.370(3), for misfeasance. The practical correction of an unusual and intolerable situation is more important than the imposition of penalties upon those who were caught in the toils of accepted though illegal practice.

■ An attempt to have all property reassessed retroactively poses insurmountable obstacles and would work injustice in many respects. Assessed valuations heretofore made must stand.

In view of the multifarious readjustments that must be made with respect to tax rates, budget estimates and other matters, a reasonable time must be allowed within which not only the Commissioner of Revenue and the county tax commissioners may act, but within which taxing authorities, and perhaps the legislature, may prepare themselves, with due consideration for the taxpayers, for this significant revaluation of taxable property.

We observe from the record that the Department of Revenue, and other bodies, have already done commendable work which should greatly simplify the task of reassessing property throughout the Commonwealth. Apparently reliable statistics are available which will enable county tax commissioners to perform their task without the necessity of new and independent appraisals of each item of taxable property. In this connection we are aware that 100 percent perfection cannot be achieved. This was recognized in Fayette County Board v. O'Rear, Ky., 275 S.W.2d 577, in which it was held a differential of five percent in the assessment of the plaintiff's property and other properties in adjacent counties was not sufficiently substantial to violate the principle of equality. However, we repeat that the Constitution and statutory law demand assessment of property at its fair cash value, and the people of this Commonwealth and this Court will no longer tolerate any substantial retreat from this standard.

■ In the light of what has just been said, we have concluded that the January 1, 1966, assessment date is the most appropriate beginning point from which to require

positive compliance with section 172 of the Constitution and any inplementing statutory law. The county tax commissioners, the Commissioner of Revenue, and other public officials will be held strictly accountable for the performance of their constitutional and statutory duties with respect to the assessment of property for tax purposes on and after that date. Such advance preparation as is necessary and proper to make the transition from customary methods will of course be required. Misfeasance or malfeasance in this connection on or after the above designated date would certainly be willful.

Perhaps this opinion appears overly long in the light of the clarity and simplicity of the basic question involved. However, we deemed a thorough discussion necessary for the benefit of those who realize the intricacy and complexity of legal problems. Constitutional interpretation is always fraught with difficulty because of possible inaccuracies in the use of words and the shifting concepts of their meaning.

As far as the general public is concerned, it should be enough to know, and upon the slightest fair consideration of the question the people of Kentucky must realize, that public officials, including the Commissioner of Revenue, the county tax commissioners, and this Court, are bound to perform their duties exactly as the Constitution and the statutory laws of this Commonwealth require when the command is clear. In the performance of our duty we are not, by this decision, in any sense changing the law of taxation, or the tax structure, or increasing the tax burden. We are simply declaring and enforcing the law, and the law is made by the people.

The judgment is reversed and the cause remanded to the Franklin Circuit Court with directions to that court to enter a judgment:

(1) Declaring that section 172 of the Kentucky Constitution and the statutory law implementing that section require all property in Kentucky (not exempted by the Constitution) to be assessed for tax purposes at its fair cash value and that this section of the Constitution and the statutory law implementing it are valid, subsisting and binding upon all public officials;

(2) directing the defendant Commissioner of Revenue to advise and instruct all county tax commissioners of their assessment duties under the Constitution and the statutes of this Commonwealth;

(3) directing defendant Commissioner of Revenue to inform and advise all county tax commissioners of the substance and effect of this opinion, and their duties thereunder;

(4) directing the defendant Commissioner of Revenue to take appropriate steps to comply with his duties under KRS 133.-150 and other applicable statutes affecting property assessment;

(5) retaining this case on the docket for the entry of such further orders as may be necessary and proper.