The FAYETTE COUNTY BOARD OF
EDUCATION et al., Appellants,

v.

Russell WHITE, Appellee.

Court of Appeals of Kentucky.

Dec. 6, 1966.

Dissenting Opinion Dec. 16, 1966.

Rehearing Denied Feb. 10, 1967.

Lasserre Bradley, B. L. Kessinger, Jr., Armand Angelucci, Lexington, for appellants.

F. Selby Hurst, Lexington, Robert Matthews, Atty. Gen., Henri Mangeot, Asst. Atty. Gen., Frankfort, for appellee.

Ben Fowler, Dailey & Fowler, Frankfort, White & Clark, Hopkinsville, for amicus curiae.

CULLEN, Commissioner.

In this taxpayer's class action judgment was entered which in effect held that the total tax rate of the Fayette County Board of Education for the school year 1966–67 (tax year 1966) could not include more than 9.6 cents per $100 of assessed valuation as a special, voted, building fund levy. The board of education has appealed.

The 9.6-cent rate is the "compensating rate" as defined in KRS 132.010. The circuit court held that the school board was limited to that rate by the provisions of subsection (6) of KRS 160.477. The board maintains that it was entitled to exceed that rate, to meet rental payments in connection with revenue bond projects, by virtue of the exception set forth in subsection (7) of KRS 160.477. In order properly to understand and resolve the issue it is necessary to consider KRS 157.440 and 160.470 along with 160.477, particularly as they were affected by 1965 amendments.

The decision of this court in Russman v. Luckett, Ky., 391 S.W.2d 694, which in substance was that the Kentucky Constitution means what it says in requiring property to be assessed at fair cash value, gave rise to concern that local taxes might be increased inordinately by application of existing tax rates to full value assessments. The result was the calling in 1965 of a special session of the General Assembly, which enacted what has come to be known as "roll back" legislation, designed to cause adjustment of tax rates downward as assessments went up. Kentucky Acts, 1965 First Extraordinary Session, Chapter 2. Subject to certain exceptions, the basic provision of this legislation was that for the 1966 tax year and for subsequent tax years the tax rate should be such rate only as would produce approximately the same revenue as was produced in 1965. This was defined, in KRS 132.010, as the "compensating rate."

The 1965 legislation included amendments to the three sections of the school law hereinbefore mentioned, KRS 157.440, 160.470 and 160.477, which relate to ad valorem taxes for school purposes. KRS 160.470 provides for the basic general fund levy which all school districts are authorized to levy; also it contains provisions governing budgets. KRS 157.440 authorizes an extra general fund levy if voted by the people. KRS 160.477 authorizes a special building fund levy if voted by the people.

Prior to the 1965 "roll back" legislation the Fayette County Board of Education was levying the basic general fund levy of $1.50, an extra, voted, general fund levy of $0.50, and a special, voted, building fund levy of $0.32. Under the 1965 legislation:

1. The basic general fund levy was required to be "rolled back" to a rate which would produce no more revenue than was produced from that tax in 1965, plus an allowance for assessment growth and with an option, after public hearing, to raise the rate so as to increase the revenue 10 percent. KRS 160.470. The Fayette County Board of Education exercised the option. The ultimate "rolled back" rate under this levy then was 49.1 cents per $100 of assessed valuation.

2. The voted extra general fund levy was required to be "rolled back" to the "compensating rate" as defined in KRS 132.010, with an exception which shall be discussed at a later point in this opinion. KRS 157.440. The Fayette County Board of Education did not attempt to assert applicability of the exception. The "rolled back" rate under this levy was limited to 14.9 cents per hundred.

3. The voted building fund levy was required to be "rolled back" the same as above noted for the voted extra general fund levy. KRS 160.477. However, as to this levy the Fayette County Board of Education asserted that the exception was applicable, so instead of accepting the "compensating rate," which would amount to 9.6 cents per hundred, the board asked for a levy of 14.4 cents per hundred. This latter levy is the one that is in dispute in this lawsuit.

The question in issue is the proper interpretation of subsection (7) of KRS 160.-477, which subsection states the excepting circumstance under which a voted building fund levy may exceed the "compensating rate." The language of the subsection is:

"(7) Notwithstanding the limitations contained in subsection (6) of this section [the limitation to the "compensating rate"] no tax rate shall be set lower than that necessary to provide such funds as are required to meet principal and interest payments on outstanding bonded indebtedness and payments of rentals in connection with any outstanding school revenue bonds issued under the provisions of KRS Chapter 162."

In substance, the appellant board of education argues that the meaning of this subsection is that *the special voted building fund levy* is required to meet *all* bond and rental requirements, and if that levy at the "compensating rate" will not produce enough funds to meet all such requirements,

then the rate shall be increased to the amount "necessary" (subject of course to the limitation that the rate cannot go above the actual *number* of *cents* per hundred voted). The appellee maintains, and the circuit court in effect held, that the meaning of the subsection is that if *all* of the different levies, together, authorized to be made by the school board, will not, at the "rolled back" rates, produce enough revenue to meet bond and rental requirements, then the rate of the special voted building fund levy may be increased above the "rolled back" rate.

The fact situation in the Fayette County School District is that the special voted building fund tax, at the "compensating rate," will produce only around $780,000, whereas the rentals on revenue bond projects (the district has no *voted bonds*) will amount to around $1,168,000. This insufficiency of the building fund tax to meet the rental payments is nothing new—it has existed for years, and the fact is that no one ever expected that the building fund tax would or ever could meet all of the rental requirements. A substantial portion of the rental payments always has been paid out of the general fund revenues. However, the school board now maintains that the 1965 legislature intended to load all of these payments onto the building fund levy, thus in effect permitting an increase of several hundred thousand dollars in general fund expenditures.

The argument of the school board has some plausibility if KRS 160.477 is considered alone and in isolation. But when KRS 160.477 is considered with 157.440 and 160.-470, as it must be, the fallacy of the school board's interpretation immediately becomes apparent. This is because all three of the sections contain substantially the same provision, which is not one newly fashioned to meet a problem created by the "roll back" legislation but is one that has been in the law for a number of years.

Subsection (3) of KRS 157.440, relating to a special voted *general fund* levy, con-

tains exactly the same language as subsection (7) of KRS 160.477. Subsection (6) of KRS 160.470, which relates to the budget and the *overall* tax rate, states in substance that the *overall* tax rate must be enough to meet bond and rental requirements, and it states specifically that the budget otherwise shall not be approved. This latter provision has been in KRS 160.470 for a number of years; it is not something new added to meet "roll back" problems. It simply says that, out of the *total tax revenues,* bond and rental requirements must be met *first* and only what is left over can be used for other purposes. Actually, this is a *budgeting* matter and not a *tax rate* matter, because obviously no school board ever would seek to levy tax rates so low that the total revenues thus produced, if applied entirely to bond and rental payments, would not be enough for that purpose.

We think it is clear that the legislature, in subsection (3) of KRS 157.440 and in subsection (7) of KRS 160.477, simply was restating and reaffirming the proposition that bond and rental payments are to come first. We find nothing at all to indicate that the legislature intended that *all* of the bond and rental payments must come out of the building fund levy, or out of the extra voted general fund levy, or out of the basic general fund levy. The language that the "rate" has to be enough to meet bond and rental requirements is in all three sections, and none of the sections says that the tax provided for *in that section* has to carry the whole burden.

The school board argues that if subsection (7) does not have the meaning ascribed to it by the board it has no sensible meaning at all. The board says that as a practical matter the *total* tax rate never would or could produce insufficient revenue to meet bond and rental requirements alone. We agree that a situation in which such an insufficiency could arise would be abnormal, but we think the arising of such a situation is not impossible. Conceivably a disaster, or the taking over of a substantial amount of territory by the federal government,

could so reduce the total assessable property in a school district that the "rolled back" tax rates would not bring in enough revenue to meet bond and rental requirements. It is perfectly reasonable for us to consider that the legislature was making provision for such an extraordinary situation, saying in effect that no matter what may happen, the bond and rental payments must be met.

Additional reasons why we cannot find acceptable the interpretation advanced by the school board are: (1) The interpretation goes contrary to the overall purpose and objective of the "roll back" legislation; (2) it would utilize a completely irrelevant factor for permitting a few school districts only to escape from the "roll back" limitations; and (3) as to *voted bonds* the interpretation would not be reasonable.

■ Our conclusion is that the judgment properly restricted the Fayette County Board of Education to the "compensating rate" in the building fund levy.

■ The judgment contains a clause directing that "the expense of retiring school building bonds be borne by the general fund and the special voted tax in the same ratio or proportion that the said two sources were subjected to satisfaction of said indebtedness in the year 1965 * * *." (In 1965, although some $703,000 was produced by the building fund tax, only $472,552 of that amount was used to pay rentals on revenue bond projects; the remainder of the rentals, $643,883, was paid out of general fund receipts.) This provision of the judgment is inappropriate and erroneous, because it is directed to a *budget* problem which is not in issue.

To the extent that the judgment directs that the same ratio or proportion as in 1965 be continued with respect to apportionment of rentals between the general fund levy and the building fund levy it is reversed; in all other respects the judgment is affirmed.

STEWART, J., dissenting.

Opinion of STEWART, Judge (dissenting).

I dissent from the majority opinion because I do not place the same interpretation upon subsection (7) of KRS 160.477 as does that opinion. This subsection, among other things, deals with "payments of rentals in connection with any outstanding school revenue bonds issued" pursuant to KRS Chapter 162.

House Bill No. 1, Part II, Section 5, amended KRS 160.477. This amendment retained all of the old KRS 160.477 provisions and it added two subsections that I believe are dispositive of the question raised. The two subsections added to KRS 160.477 by House Bill No. 1 deal directly and specifically with the maximum rate which may be levied in lieu of the old voted rate in those school districts having a voted building fund tax. They are numbered (6) and (7). Subsection (6) of KRS 160.477 reads:

"Notwithstanding the provisions of any other subsection of this section to the contrary, for the 1966 tax year and for all subsequent years no district board of education shall request the levy of a rate under the provisions of this section which exceeds the compensating tax rate as defined in KRS 132.010, *except as provided in subsection (7) of this section,* and except that a rate which has been approved by the voters under this section but which was not levied by the district board of education in 1965 may be levied after it has been reduced to the compensating tax rate as defined in KRS 132.010." (Emphasis added.)

A school district having a voted building fund tax must conform to the "compensating rate" unless it is excepted from that requirement by the provisions of the subsection (7). Subsection (7) reads:

"Notwithstanding the limitations contained in subsection (6) of this section no

tax rate shall be set lower than that necessary to provide such funds as are required to meet principal and interest payments on outstanding bonded indebtedness *and payments of rentals in connection with any outstanding school revenue bonds issued under the provisions of KRS Chapter 162.*" (Emphasis added.)

Subsection (7) of KRS 160.477 in unmistakably clear langauge provides that a school district having a voted building fund tax, against which revenue bonds have been issued, is not limited to the "compensating rate" in fixing the special building fund rate. Subsection (7) expressly states that the rate shall be set at a figure (not to exceed the 32 cents rate voted by Fayette County) which will produce an amount sufficient to meet the yearly payments of principal and interest that will accrue on the outstanding bonds.

The majority opinion points out that the special voted building fund tax, at the "compensating rate," will produce only $780,000, whereas the rentals necessary to retire revenue bond projects that existed before House Bill No. 1 was enacted amount to around $1,168,000. The majority opinion then makes this assertion: " * * * the fact is that no one ever expected that the building fund tax would or ever could meet all of the rental requirements * * *. We find nothing at all to indicate that the legislature intended that *all* of the bond and rental payments must come out of the building fund levy, or out of the extra voted general fund levy, or out of the basic general fund levy."

The simple answer to this argument is that if the unambiguous provisions of subsection (7) of KRS 160.477 do not set the maximum rate for a voted levy at the *amount necessary to meet the yearly bond-payment requirements,* irrespective of the "compensating rate," then what possible meaning or application does it have? The majority opinion stands for the proposition that this subsection cannot be related to any conceivable school tax situation involving

the payment of revenue bonds issued to construct school buildings.

I would reverse the judgment.

Chief Justice Palmore concurs in this dissenting opinion.