### GENERAL AMERICAN TRANSPORTATION CORPORATION,
#### Plaintiff-Appellee,

v.

### COMMONWEALTH OF KENTUCKY,
#### Defendant-Appellant.

#### No. 85–5342.

United States Court of Appeals,
Sixth Circuit.

Decided May 16, 1986.

Nathan Goldman, Legal Services Section, Revenue Cabinet, Frankfort, Ky., Gary Brown (argued), for defendant-appellant.

Bruce F. Clark (argued), Stites & Harbison, Frankfort, Ky., Mark R. Overstreet, for plaintiff-appellee.

Before ENGEL, MILBURN and RYAN, Circuit Judges.

ENGEL, Circuit Judge.

The Commonwealth of Kentucky appeals a judgment of the United States District Court for the Eastern District of Kentucky holding that the Commonwealth violated section 306 of the Railroad Revitalization and Regulatory Reform Act, 49 U.S.C. § 11503, ("the 4–R Act") and establishing an ad valorem tax rate on rolling stock for the years 1981 through 1984 at $.3184 per $100.00 of assessed value. We conclude that Kentucky's ad valorem tax rate of $1.00 per $100.00 on railroad rolling stock violated the 4–R Act and that since no identifiable existing tax rate fulfilled the specific standard of the 4–R Act, the trial judge did not err in developing an appropriate rate based upon the evidence before him.

### I.

General American Transportation Corporation is in the business of leasing railroad cars to shippers who pay a tariff to railroads for transporting those cars to their

destinations. General American's cars are subject to taxation by Kentucky and are classified as public utility property. Until January 1, 1984, the cars were taxed at a special rate of $1.00 per $100.00 of assessed value. Ky.Rev.Stat. § 136.-120(4)(a).[1] Other personalty in Kentucky was taxed, according to category, at rates ranging from $.45 to $.001 per $100.00 of assessed value. Unlike most other personalty, however, rolling stock was exempt from county, city, or other district taxation. Kentucky's ad valorem tax classification system does not classify property according to its function and it therefore contains no single classification for commercial and industrial property. This characteristic of Kentucky's tax system makes that system difficult to review under federal law which contemplates a different type of tax classification system.

General American paid the ad valorem tax on its rolling stock until 1982, when it refused to pay its 1981 tax bill and sought a refund of the taxes paid during the years 1979 through 1981. General American claimed that the $1.00 per $100.00 rate violated the Railroad Revitalization and Regulatory Reform Act, 49 U.S.C. § 11503. The Kentucky Department of Revenue denied General American's refund request and issued a ruling sustaining the validity of the rate. General American subsequently filed suit in the district court, challenging the $1.00 tax rate.

In an opinion of December 14, 1984, the district court concluded that the $1.00 per $100.00 rate under § 136.120(4)(a) violated the 4–R Act by taxing General American's rolling stock at a rate "higher than *any* comparable tax rate generally applicable to commercial and industrial property within the Commonwealth...." The court enjoined Kentucky from collecting the portion of the unpaid taxes from 1981 and 1982 which were deemed discriminatory. It further ordered the parties to attempt to reach an agreement on a lawful tax rate.

In a subsequent opinion of April 9, 1985, the district court, noting that the parties had failed to agree on a lawful rate of taxation, adopted a rate of $.3184 per $100.00 for the years 1981 through 1984. The rate adopted equals the mean rate over four years applied to certain categories composed solely of commercial and industrial property.

On appeal, Kentucky contends that its rate under § 136.120(4)(a) did not violate the 4–R Act, and that even if the rate imposed under § 136.120(4)(a) did violate the Act, the appropriate rate would be $.45 per $100.00 of assessed value, a rate which it asserts is the catchall rate applied to all property not expressly placed in an ad valorem tax category.

## II.

■ "One method of discrimination, prohibited by § 306(c), is expressly imposing a different tax rate on rail property than is imposed on other commercial and industrial property. This is de jure discrimination." *Burlington Northern RR. Co. v. Lennen,* 715 F.2d 494, 497 (10th Cir.1983). This is what Kentucky has done.[2] The 4–R Act provides that rail transportation property

1. Section 136.120(4)(a), before it was amended effective January 1, 1984, stated in part: "The rolling stock of [rail car] companies shall be taxable for state purposes only at the rate of one dollar ($1.00) upon each one hundred dollars ($100) of value, and shall not be subject to taxation by a county, city, or other taxing district."

2. The Court of Appeals of Kentucky has previously addressed Kentucky's problems of *de facto* tax discrimination. *Russman v. Luckett,* 391 S.W.2d 694 (Ky.1965). In *Russman,* the Kentucky Court of Appeals held that disparate rates of tax assessment within a single tax property classification violated a provision of the Kentucky Constitution which required the assessment of all property at "its fair cash value." *Id.* at 695. In investigating tax discrimination against railroads, the Senate entertained testimony which indicated that the rate discrimination complained of here was the direct result of Kentucky's attempt to recoup tax revenues lost because of the reduction in assessments on railroad and public utility property compelled by the court in *Russman. See Discriminatory Taxation of Common Carriers: Hearings on S.927 Before the Subcomm. on Surface Transporation of the Senate Comm. on Commerce,* 90th Cong., 1st Sess. 17–19 (1967).

may not be taxed at a rate higher than the rate generally applicable to commercial and industrial property.[3] Yet Kentucky, until 1984, levied a $1.00 per $100.00 ad valorem tax on railroad rolling stock when the maximum ad valorem tax rate it levied on other personalty was only $.45 per $100 of value.

■ Kentucky argues that, although the tax rates levied by the state on rolling stock and on commercial and industrial property differ, the rates relevant for purposes of the 4–R Act do not differ. It contends that, in determining whether its $1.00 per $100.00 rate exceeds the rate generally applicable to commercial and industrial property, the reviewing court should consider the fact that other similar properties are, unlike rolling stock, subject to taxation by counties, cities and other taxing districts. Kentucky contends in effect that the exemption of rolling stock from taxation by county, city, and other taxing districts justifies the $.55 differential in ad valorem taxes levied by the state on rolling stock over the highest rate levied on other personalty. According to Kentucky, the effective local rate of taxation by all local taxing authorities was $.55 per $100.00 and, consequently, property subject to both state and local taxation was effectively taxed at the same $1.00 per $100.00 rate that applied to rolling stock.

This argument fails for the reasons stated in Judge Bertelsman's opinion:

> The 4–R Act speaks in terms of the *State* as an individual taxing entity as the proper focal point of 4–R Act analysis, and not any combined property tax rate scheme within that state. Under a 4–R Act analysis, a reviewing court need not consider the state's entire tax structure—just an analysis of the individual tax imposed by the taxing entity alleged to be discriminatory.

Kentucky does not contend that fifty-five cents of each dollar collected by the state was delivered over to local taxing authorities, nor that the state acted only as a collection agent for local authorities. In fact, Kentucky is expressly prohibited from so doing.[4] Nor does it allege that in all other cases, local taxing authorities merely acted as collection agents for the state.

---

**3.** Section 306 of the 4–R Act originally stated in part:

> Notwithstanding the provisions of § 202(b), any action described in this subsection is declared to constitute an unreasonable and unjust discrimination against and an undue burden on, interstate commerce. It is unlawful for a State, a political subdivision of a State, or a governmental entity or person acting on behalf of such State or subdivision to commit any of the following prohibited acts.
>
> \*    \*    \*    \*    \*    \*
>
> (c) The levy or collection of any ad valorem property tax on transportation property at a tax rate higher than the tax rate generally applicable to commercial and industrial property in the same assessment jurisdiction.

49 U.S.C. § 26c, Railroad Revitalization and Regulatory Reform Act of 1976, Pub.L. 94–210, § 306, 90 Stat. 31, 54 (1976).

Pursuant to Pub.L. 95–473, § 11503, 92 Stat. 1337, 1446 (1978), § 306 was revised and recodified at 49 U.S.C. § 11503. Although minor alterations were made to the section's language, the revisions did not make substantive changes. Pub.L. 95–473, § 3(a), 92 Stat. at 1466. *See Clinchfield RR. Co. v. Lynch,* 700 F.2d 126, 128 n. 1 (4th Cir.1983); *Atchison, T. & S.F. Ry. Co. v. Lennen,* 732 F.2d 1495, 1497 (10th Cir.1984). Section 11503 provides in part:

> (a) In this section—
>
> \*    \*    \*    \*    \*    \*
>
> (3) "rail transportation property" means property, as defined by the Interstate Commerce Commission, owned or used by a rail carrier providing transportation subject to the jurisdiction of the Commission under subchapter 1 of chapter 105 of this title.
>
> (4) "commercial and industrial property" means property, other than transportation property and land used primarily for agricultural purposes or timber growing, devoted to a commercial or industrial use and subject to a property tax levy.
>
> (b) The following acts unreasonably burden and discriminate against interstate commerce, and a State, subdivision of a State, or authority acting for a State or subdivision of a State may not do any of them:
>
> \*    \*    \*    \*    \*    \*
>
> (3) levy or collect an ad valorem property tax on rail transportation property at a tax rate that exceeds the tax rate applicable to commercial and industrial property in the same assessment jurisdiction.

49 U.S.C. § 11503.

**4.** [T]he rolling stock of such companies shall be taxable *for state purposes only....*" Ky.Rev. Stat. § 136.120 (emphasis added).

We therefore agree with Judge Bertelsman that the 4–R Act requires that we compare Kentucky's ad valorem tax on rolling stock with the rate levied on commercial and industrial property by the state alone, and not the aggregate of rates levied by the state, county, city, and other taxing authorities.

■ Kentucky also argues that General American has made no showing of discriminatory intent. We agree with the Eleventh Circuit that under the 4–R Act, "discriminatory intent is not a precondition to recovery once disparate impact is shown." *Louisville & Nashville R.R. Co. v. Department of Rev.*, 736 F.2d 1495, 1496 (11th Cir.1984).

### III.

■ Kentucky next contends that the district court erred in calculating the tax rate generally applicable to commercial and industrial property and thereby in establishing the lawful tax rate for rolling stock for the years 1981 through 1984.

Since Kentucky does not classify property for purposes of its ad valorem tax as commercial and industrial, but includes commercial and industrial property in a variety of categories, no one of which contains a majority of the state's commercial and industrial property, the district court could not simply adopt the rate applicable to one of these categories as the rate generally applicable to commercial and industrial property. Instead, the court was compelled to develop such a rate. The difficulty of this task, fully recognized by the district court, lay in establishing "a sufficiently reliable indicator of the tax rate generally applicable to commercial and industrial property in the Commonwealth" from a number of rates and categories, no one of which represented both a sufficiently large sampling of commercial and industrial property and a rate applied peculiarly to commercial and industrial property.

The court rejected as inherently unreliable Kentucky's proposed rate of $.45 per $100.00, the maximum rate applied to personalty under § 136.120, because, first, that rate did not apply to an estimated $10 billion of commercial and industrial property, and, second, that rate included a significant portion of non-commercial and non-industrial property. In short, this $.45 per $100.00 rate by its own application under Kentucky law was not "the tax rate generally applicable to commercial and industrial property in the same assessment jurisdiction." 49 U.S.C. § 26c (1976). Instead, the court selected, from information supplied by Kentucky during discovery, a tax rate based on a four-year weighted average of commercial and industrial tax rates applied to eight categories comprised solely of commercial and industrial property with an aggregate assessed value in excess of $10.5 billion.

Under the circumstances, we do not believe that the district court erred either in adopting a mean rate or in selecting the categories used to calculate that mean rate. It may be true that the statutory tax structures of other states make it possible to adopt a specific tax rate actually applied to commercial and industrial property in the state's taxing system, or even to employ a sampling that includes all or a clear majority of the state's commercial and industrial property, in calculating the mean rate. *Cf. Trailer Train Co. v. State Board of Equalization*, 697 F.2d 860, 867 (9th Cir. 1983). However, fidelity to the requirements of the 4–R Act was not possible in Kentucky by applying such measures.

Kentucky admits that, because of the nature of its classification system, it is impossible to determine precisely the amount of commercial and industrial property in the state and its distribution in the ad valorem tax classifications. Given the dispersion of commercial and industrial property within this classification system and the variance in applicable rates, we do not find that the court erred in adopting a mean rate. The Ninth Circuit has approved the use of an average rate when the rate actually applied to a majority of the state's commercial and industrial property cannot be determined. "If it is impossible to determine which roll contained the majority of the state's commercial and indus-

trial property, the average tax rate for all property shall be used as the basis for comparison."[5] *Trailer Train,* 697 F.2d at 869. In circumstances such as these, where no single classification covers more than approximately 20% of the relevant property and the rates applied to the various classifications differ by more than a factor of one hundred, a mean value may provide a more meaningful and reliable characterization of those rates as a group than any single actual rate, whether it is the median rate or the rate applied to a category containing a plurality of the property. *See Atchison, T. & S.F. RR. Co. v. Lennen,* 732 F.2d 1495, 1504–05 (10th Cir. 1984); *cf. ACF Ind., Inc. v. Arizona,* 714 F.2d 93 (9th Cir.1983); *but cf. Clinchfield RR. Co. v. Lynch,* 700 F.2d 126 (4th Cir. 1983).

Moreover, once discrimination has been shown, the burden of overcoming such informational problems has been held to lie with the state. Once "the railroads established an 'equitable difference' for purposes of § 306 ... any further burden in the case before us was the state's to bear." *Clinchfield,* 700 F.2d at 131–32. In view of the impediments to precise analysis in this case, it is significant that what information was available, including the data relied upon by the court in making its calculations, lay in Kentucky's control. If Kentucky objected to the sufficiency of the calculations, it could have proffered additional and more reliable data from its records. Since the information necessary to make a reliable determination lay in Kentucky's control, and Kentucky declined to provide more appropriate information to remedy the alleged defects in the court's calculations, we conclude that the court's reliance on the eight categories of commercial and industrial property as data for its calculation of the rate generally applicable to commercial and industrial property was not error.

5. In the present case, the district court did not, as the Ninth Circuit suggests, simply compute the average tax rate applied to all property, but instead sought a more reliable figure based on rates applied only to commercial and industrial property. As noted below, we do not find that the court's extra effort constitutes error.

Accordingly, the decision of the district court is AFFIRMED.