**COMMONWEALTH of Kentucky and Commonwealth of Kentucky ex rel. Department of Conservation, Division of Strip Mining & Reclamation, Appellants,**

v.

**James WOMBLES et al., Appellees.**

Court of Appeals of Kentucky.

May 5, 1961.

Jo M. Ferguson, Atty. Gen., Earle V. Powell, Asst. Atty. Gen., for appellants.

J. W. Craft, Jr., H. Garland Wells, S. M. Ward, Hazard, for appellees.

MOREMEN, Judge.

Appellants, Commonwealth of Kentucky, individually, and ex relatione of its Department of Conservation, Division of Strip Mining and Reclamation, instituted suit under section 11 of the Criminal Code of Practice (see Commonwealth v. Sherman, 85 Ky. 686, 4 S.W. 790) to recover fines and sums alleged to be due from the appellees, James and Henry Wombles, Old Kentuck Coal Company and Delta Mining Company, Inc., resulting from violations of the provisions of Chapter 350 of the Kentucky Revised Statutes, relating to strip mining of commercial coal.

The Commonwealth sought judgment against appellees on the ground that they had engaged in strip mining activities without obtaining a permit under KRS 350.060 and without paying the fee required under subsection (4) of that same section. On this account they asked judgment in the sum of $10,150. KRS 350.990 provides that an operator of strip mines in violation of the provisions of the act shall be fined not less than $100 nor more than $5,000 for each offense and each day upon which a violation occurs shall be deemed a separate offense. On this account the Commonwealth prayed judgment in the penal sum of $30,500. The main defense interposed was a denial that appellees' operation constituted strip mining under the terms of the act.

On trial of the case it was shown that the operators used a method commonly known as auger mining and the principal question presented to the trial court was whether the process was in fact strip mining under the terms of Chapter 350 of the Kentucky Revised Statutes.

At the end of the testimony introduced by appellants, appellees moved that the court peremptorily instruct the jury to return a verdict in their favor. The motion was sustained, the directed verdict returned and judgment was entered on that verdict.

An amendment to Chapter 350, which became effective in 1960, specifically includes auger mining but at the time of the alleged violation strip mining was defined as "all or any part of the process followed in the production of commercial coal from a natural coal deposit by the open pit or open cut method."

In auger mining the operator locates the level of the seam of coal in the mountain or hill. Then with a bulldozer or other heavy earth moving equipment he "faces up" the vein. This is done by cutting into the side of the mountain until the seam is exposed and sufficient ground is leveled for the auger machinery. This cut, which sometimes circumvents the hill, has the appearance of any ordinary road cut into a

conspicuously elevated mass of ground. It resembles a tram road built to a drift mouth in the ordinary coal mining operation, although the width of the cut is considerably wider in many cases. After the seam is "faced up" the coal is removed by means of a very large auger—as shavings are brought to the surface of a board when an ordinary bit is driven into it by a brace. When a path is cut around a mountain the dirt is pushed over and down the side. This displaced earth and debris is called a "spoil bank." There is no doubt that some of the overburden of earth must be removed when the vein is being faced up, but in auger mining the cap is not removed and the augers are sunk back into the hill at a level many feet below its summit.

The trial court held that no overburden had been removed under the meaning of the word as used in subsection (2) of KRS 350.010 which reads " 'overburden' means all the earth and other materials which are removed to gain access to the commercial coal in the process of strip mining," because no commercial coal was removed in the facing up operation. He was also of the opinion, since auger mining had been the accepted method in this state for some time before the act was enacted, if the legislature had intended to include auger mining in its strip mining act it would have so stated.

Appellant contends that an examination of KRS 350.020 will demonstrate that the General Assembly sought to correct the unregulated mining of coal in all types of operation when it resulted in soil erosion, stream pollution, the accumulation of stagnant water and the seepage of contaminated water, destruction of the value of the land for agricultural purposes and other evils, and that the process of auger mining tends to create those injurious effects and therefore should be included under the terms of the act. It contends that the facing of the coal is, in fact, stripping.

The decision in this case seems to narrow down to the issue of whether the legislature intended the act to include auger mining when it mentions only strip mining. As stated above, subsection (1) of KRS 350.010 reads:

> " 'Strip mining' means all or any part of the process followed in the production of commercial coal from a natural coal deposit by the open pit or open cut method."

Encyclopaedia Britannica (1945, Vol. 5, page 911) states: "Open-cut mining is the term applied to the working of mineral deposits which either outcrop at the surface of the ground or are covered by a shallow overburden or capping, which must be removed before the ore can be mined. In coal mining work mining by this means is generally termed stripping."

It is the general rule that words and phrases in the Statutes are used in their technical meaning if they have acquired one; and in their popular meaning if they have not, Hawley Coal Company v. Bruce, 252 Ky. 445, 67 S.W.2d 703, and we are of the opinion that if the expression, strip mining, has acquired a technical meaning, it is in the sense that practically all the overburden or cap must be removed in order to get at the coal and to mine it. Strip mining in this sense has been in effect in Kentucky for many years and certainly has acquired that popular meaning. In its popular sense it has long been used to designate that operation which requires the removal and often destruction of the surface covering the coal.

The General Assembly must also have believed that the act as written did not include auger mining because in the 1960 session subsection (1) of 350.010 was amended to read as follows:

> " 'Strip mining' means all or any part of the process followed in the production of commercial coal, or clay from a natural coal, or clay deposit by the open pit or open cut method or *the auger method*, but shall not include the casual removal of coal, or

clay in building roads or other developments of the owner's property for purposes other than the production of coal, or clay by the open pit or open cut method or auger method."

We believe the court was correct in directing a verdict for appellees and the judgment is therefore affirmed.