**CITY OF WORTHINGTON HILLS, Kentucky, Appellant,**

v.

**WORTHINGTON FIRE PROTECTION DISTRICT; Worthington Community Association; Louisville and Jefferson County Planning Commission; and Jefferson County, Kentucky, Appellees.**

No. 2002–CA–002266–MR.

Court of Appeals of Kentucky.

June 11, 2004.

Rehearing Denied July 20, 2004.

---

Stephen A. Schwager, Kyle T. Hubbard, Louisville, KY, for appellant.

J. Bissell Roberts, Stites & Harbison, PLLC, Louisville, KY, for appellees, Worthington Hills Fire Protection District and Worthington Community Association.

Before MINTON, SCHRODER and TAYLOR, Judges.

## OPINION

TAYLOR, Judge.

The City of Worthington Hills (also referred to as Worthington Hills or as the City) brings this appeal from a September 6, 2002, opinion and order of the Jefferson Circuit Court. We vacate and remand with directions.

The present controversy surrounds Worthington Hills' erection of a gate across a public right of way known as

Halifax Drive. Worthington Hills is a sixth class city located within Jefferson County, Kentucky. Originally, Halifax Drive was located totally within the city limits; in 1998, Halifax Drive was extended into Oakhurst Subdivision (Oakhurst). Oakhurst is located outside of the City and within an unincorporated portion of Jefferson County. Within the city limits, Halifax Drive is a city street dedicated to public use.

Worthington Hills was concerned about the volume of vehicular traffic that utilized Halifax Drive as a "shortcut to Murphy Lane, KY 22, Westport Road, and Oldham County, and the excessive speeds these vehicles reached...." Appellant's Brief at 1. Soon after Halifax Drive in Oakhurst was completed and open to vehicular traffic, the City passed Ordinance No. 5, Series 1998. Therein, the City sought to "close" Halifax Drive pursuant to Kentucky Revised Statutes (KRS) 82.405(1) and (2) "at the juncture of Halifax Drive where the boundary of the City meets the boundary of Oakhurst Subdivision." In accordance therewith, the City erected a single gate across Halifax Drive at the City's boundary with the County.

Sometime thereafter, the Jefferson County Attorney contacted the City and requested it to file an application to close with the Louisville and Jefferson County Planning Commission pursuant to § 14.2 of the Development Code of Jefferson County. The City complied with the request and filed an application to close Halifax Drive at its boundary with the County. The planning commission adopted a resolution recommending that the City's application for closure of Halifax Drive be denied by the Jefferson County Fiscal Court. The fiscal court ultimately concluded that the application to close should be remanded to the planning commission to dismiss in view of KRS 82.405. The land development and transportation committee of the planning commission dismissed the application in compliance with the fiscal court mandate. It does not appear that the planning commission, as a whole, considered the application after remand from the fiscal court.

Concerned that Ordinance No. 5, Series 1998 did not comply with the mandates of KRS 82.405(2), the City subsequently enacted Ordinance No. 1, Series 2000, on April 18, 2000. Its language mirrored the language of Ordinance No. 5, Series 1998, and closed Halifax Drive pursuant to KRS 82.405(1) and (2) "at the juncture of Halifax Drive where the boundary of the City meets the boundary of Oakhurst Subdivision."

On June 9, 2000, the Worthington Fire Protection District and the Worthington Community Association[1] (collectively referred to as the Worthington Fire Department) filed a "Complaint" in the Jefferson Circuit Court seeking a declaration of rights under KRS 418.040. The Worthington Fire Department named as defendants Worthington Hills, Jefferson County, Louisville and Jefferson County Planning Commission, Jeremy Schell, Mary Gayle Schell, Walter Hunt, and Jimmie L. Hunt.[2] The Worthington Fire Department requested the circuit court to declare City Ordinance No. 5, Series 1998 and City

1. As observed by the circuit court, "[t]he Worthington Fire Protection District, a KRS Chapter 75 taxing district, is the sole member of the Worthington Community Association, a Kentucky non-profit corporation, d/b/a The Worthington Fire Department. The Worthington Fire Department provides fire protection services to all property located within the Worthington Fire Protection District." The Worthington Fire Protection District includes property located within Worthington Hills.

2. The Schells and the Hunts are owners of property located on Halifax Drive within the City limits.

Ordinance No. 1, Series 2000 void. Specifically, the Worthington Fire Department alleged that the ordinances failed to comply with KRS 82.405 and that the City had no independent authority to close Halifax Drive without complying with applicable planning and zoning regulations. The circuit court ultimately concluded that the City's closure of Halifax Drive at its boundary with Jefferson County was improper. This appeal follows.

The City contends that the circuit court committed error by concluding that its closure of Halifax Drive was improper. In reaching such decision, the circuit court reasoned as follows:

2. The City of Worthington Hills is a sixth class city in Jefferson County, which has no zoning powers. KRS 100.137. That Fiscal Court adopted the Development Code, which applies to all fifth and sixth class cities in Jefferson County, as well as all unincorporated areas of Jefferson County. Fiscal Court is the legislative body empowered by statute to decide all zoning matters in all unincorporated areas of Jefferson County, and in all cities of the fifth and sixth class, including the City.

3. Halifax Drive is a public street and a "public facility" in accordance with Kentucky zoning laws (KRS 100.111(20)). Once dedicated and placed into use, Halifax Drive could not be closed until the Commission had *first* reviewed a proposed closure in light of its agreement with Jefferson County's "Comprehensive Plan" and acted within 60 days to make its recommendation to the appropriate legislative body pursuant to KRS 100.324(4), regarding the proposed street closing. This has never been done.

4. Jefferson County's Development Code, § 14.2(A) states that it "shall apply to all requests for closing/abandonment of a public right-of-way ... dedicated to the use of the public." This is a mandatory provision. This section of the Development Code was intended to apply to all street and alley closures anywhere in Jefferson County. There is no provision in the Development Code exempting cities of the fifth and sixth class from its provisions. § 14.2(F) of the present Development Code concerning Commission action does not address what action the Commission should take if a fifth or sixth class city proposes to construct a gate to physically close a publicly dedicated street, a portion of which is located in the City and a portion which is located in Jefferson County.

5. Kentucky's Binding Elements Act, KRS 100.401 et seq., requires all Binding Elements to be enforced by the Commission. When the development of Oakhurst Subdivision was approved by Fiscal Court, the Binding Elements imposed required that Halifax Drive be constructed between the City and Murphy Lane, and dedicated to the public use as a public street. The City claims that pursuant to KRS 82.405, it was authorized to close Halifax Drive at the City limits without any consideration by the Commission or any approval by Fiscal Court. If the City's position is sustained, it would create a chaotic situation where Jefferson County's fifth and sixth class cities (Jefferson County has 90 such cities) could close dedicated public streets at the city's boundary with other cities or the unincorporated county without consideration by the Commission and without approval by an adjacent City or Fiscal Court. Such street closings by fifth and sixth class cities in Jefferson County were not intended by the General Assembly when it enacted KRS 82.405 and KRS Chapter 100.

6. The Court concludes to the extent there are conflicts between re-

quirements of Development Code, the Binding Elements Act, and KRS, [sic] Chapter 100, the City's legal position concerning its attempted closures of Halifax Drive, and statutes pertaining to road closures by cities (KRS 82.405), and counties (KRS 178.050 et seq.), it is the responsibility of the Court to harmonize those conflicts and give effect to the Development Code and these statutes. *Combs v. Hubb Coal Corp.*, Ky., 934 S.W.2d 250 (1996); *Ledford v. Faulkner*, Ky., 661 S.W.2d 475 (1993). Therefore, the Court concludes as a matter of law it was mandatory that an "Application To Close" be first filed by the City with the Commission for the Commission's recommendation regarding the City's proposed closure of Halifax Drive as a "public facility", pursuant to the Development Code and KRS 100.324(4). The process for a street closure set forth in Development Code § 14.2 must be followed for all street closings. The considerations that the Commission should make in deciding whether to recommend a street closure to a legislative body are those set forth in Development Code § 14.2.(H). Since the section of Halifax Drive which the City proposed to close impacts Halifax Drive in both the unincorporated Jefferson County and in the City, the Court concludes that the section of Halifax Drive located in the City can be lawfully closed only after an application is filed with the Commission to close the road pursuant to Section 14.2 of the Development Code, KRS 100.324(4) and only if the Fiscal Court approves the road closing both in the City and in the county, pursuant to the provisions of KRS Chapter 178. Any application for street closure should also include a request by the applicant for a "public facility" review by the Commission, and the Commission must complete that review pursuant to KRS 100.324(4) as part of the street closing application process. (footnote omitted).

....

11. The City's attempts to enact Ordinance No. 5, Series 1998 and Ordinance No. 1, Series 2000 in accordance with the requirements of KRS 82.405(2) were legally deficient for the reasons given above and for the following reasons:

(a) The City failed to make Findings of Fact identifying all property owners in or abutting the public way to be closed prior to the passage of either Ordinance (KRS 82.405(2));

(b) The City failed to give proper written notice of the proposed closing to all property owners in or abutting that section of Halifax Drive to be closed, including LWC [Louisville Water Company]and MSD [Metropolitan Sewer District];

(c) The City enacted both those Ordinances prior to receiving written notarized consents approving the closing from all property owners in or abutting the public way or portion thereof to be closed, including LWC and MSD; and

(d) The City's notices to property owners were "misleading" because they represented the City would file an application to close the street with the Commission, which would make a recommendation for closing to the legislative body having· jurisdiction over the street. When the City enacted Ordinance No. 1, Series 2000, Halifax Drive had already been physically closed and the City had no intention of filing an application to close the street with the Planning Commission.

The circuit court's decision is essentially premised upon three grounds: (1) Worthington Hills must follow the applicable

planning and zoning statute KRS 100.324(4) and regulation (§ 14.2 of the Jefferson County Development Code) to properly effectuate a closure of Halifax Drive; (2) the City must obtain Jefferson County Fiscal Court approval under KRS Chapter 178 to properly effectuate a closure of Halifax Drive; and (3) the City failed to comply with the requirements of KRS 82.405(1) and (2). We shall analyze these grounds seriatim.

■ The planning and zoning scheme of this Commonwealth is codified in KRS Chapter 100. In construing KRS Chapter 100, we are aided by KRS 100.361(2) which reads:

Nothing in this chapter shall impair the sovereignty of the Commonwealth of Kentucky over its political subdivisions. Any proposal affecting land use by any department, commission, board, authority, agency, or instrumentality of state government shall not require approval of the local planning unit. However, adequate information concerning the proposals shall be furnished to the planning commission by the department, commission, board, authority, agency, or instrumentality of state government.

Under this statute, the legislature has expressly exempted an instrumentality of state government from complying with planning and zoning. A sixth class city clearly constitutes an "instrumentality of state government" under KRS 100.361(2) and, thus, is immune from complying with planning and zoning regulations. *See City of Louisville Bd. of Zoning Adjustment v. Gailor,* Ky.App., 920 S.W.2d 887 (1996); *Edelen v. Nelson County,* Ky.App., 723 S.W.2d 887 (1987). Therefore, we must conclude that the City is not bound by § 14.2 of the Jefferson County Development Code.

As to whether the City must follow the mandates of KRS 100.324(4),[3] we view *Hopkinsville–Christian County Planning Commission v. Christian County Board of Education,* Ky.App., 903 S.W.2d 531 (1995) as dispositive. In that case, the Court of Appeals was presented with the issue of whether a county board of education must obtain approval of the local planning commission before building an athletic field on school property. To resolve the issue, this Court was required to construe two seemingly conflicting statutes—KRS 100.361(2), which exempted instrumentalities of state government from planning and zoning, and KRS 100.324(4), which required planning commission review of proposals relating to public facilities.[4] In an effort to harmonize the two statutes, this Court held:

Recognizing these rules we construe the two statutes as mandating that the school board furnish adequate informa-

---

**3.** KRS 100.324(4) reads:

Any proposal for acquisition or disposition of land for public facilities, or changes in the character, location, or extent of structures or land for public facilities, excluding state and federal highways and public utilities and common carriers by rail mentioned in this section, shall be referred to the commission to be reviewed in light of its agreement with the comprehensive plan, and the commission shall, within sixty (60) days from the date of its receipt, review the project and advise the referring body whether the project is in accordance with the comprehensive plan. If it disapproves of the project, it shall state the reasons for disapproval in writing and make suggestions for changes which will, in its opinion, better accomplish the objectives of the comprehensive plan. No permit required for construction or occupancy of such public facilities shall be issued until the expiration of the sixty (60) day period or until the planning commission issues its report, whichever occurs first.

**4.** Public facility is defined by KRS 100.111(19) as meaning "any use of land whether publicly or privately owned for transportation, utilities, or communications, or for the benefit of the general public, including but not limited to libraries, streets...."

tion concerning proposed public facilities to the planning commission for its review and opinion. Following the clear wording of KRS 100.361(2), we are not inclined to believe the legislature in enacting KRS 100.324(4) intended to mandate that a school board—an obvious agency of the state—be required to obtain approval of a local planning unit before erecting a public facility. In the final analysis, the school board may disregard the opinion of the planning commission. We, therefore, harmonize these statutes by construing them as requiring "mandatory review" by the planning commission (KRS 100.324(4)), but "voluntary compliance" by the school board. KRS 100.361(2).

903 S.W.2d at 532–533.

■ Based upon our reading of *Hopkinsville–Christian County Planning Commission*, we conclude that Worthington Hills, as an instrumentality of the state, must seek a "mandatory review" by the planning commission under KRS 100.324(4) but is not required to comply with the planning commission's ultimate decision. The City filed an application to close Halifax Drive with the planning commission in 1999. The planning commission recommended the application be denied based upon several factors, including that closure would violate the comprehensive plan. We view the planning commission's review of the City's application to close as tantamount to a review under KRS 100.324(4). Thus, we believe that the City has, in fact, sought review of the planning commission under KRS 100.324(4).

We shall now address whether Worthington Hills must obtain the approval of the Jefferson County Fiscal Court pursuant to KRS Chapter 178, to close a portion of a public way located within its boundaries. In support of its position that fiscal court approval is necessary, the circuit court specifically cited to KRS 178.070, KRS 178.115, and KRS 178.116.

■ We think the plain language of KRS 178.070, KRS 178.115, and KRS 178.116 clearly limit their application to "county roads." In this case, the gate was erected across a portion of Halifax Drive located within the city limits and, thus, was erected across a city street. Accordingly, we conclude that KRS 178.070, KRS 178.115, and KRS 178.116 are inapplicable to closure of a city street and that Worthington Hills need not obtain fiscal court approval for its closure of a portion of Halifax Drive under these statutes.

On the contrary, we hold that the City possesses the unquestionable authority to close Halifax Drive under KRS 82.405(1) and (2):

(1) If a legislative body of a city determines that a public way located within the city should be closed in whole or in part, and that all property owners in or abutting the public way or portion thereof agree to the closing of the public way, the legislative body may proceed to close the public way or portion thereof as provided in subsection (2) of this section. If that determination is not made, a public way or portion thereof may be closed only as provided in subsections (3) and (4) of this section.

(2) The legislative body of a city may close a public way, in whole or in part, as provided in this subsection, if it makes the following findings of fact:

(a) Identification of all property owners in or abutting the public way or portion thereof to be closed;

(b) Written notice of the proposed closing was given to all property owners in or abutting the public way or portion thereof being closed; and

(c) All property owners in or abutting the public way or portion thereof being closed have given their written notarized consent to the closing, and copies of the consent shall be attached thereto.

Under subsection (2), the legislative body of a city must make findings of fact that identification of, written notice to, and written consent of "all property owners in or abutting the public way or portion thereof" to be closed was given and received. We believe the City complied with its duty to make such findings of fact through passage of Ordinance No. 1, Series 2000. Therein, the legislative body of the City found that identification of, written notice to, and written consent of the appropriate property owners had been effectuated. Under KRS 82.405(2), we believe these findings may be made contemporaneously with the passage of the ordinance effectuating road closure.

It appears the City actually gave written notice to and received written consent from some fifty (50) property owners in an attempt to comply with KRS 82.405(2). It is, however, unclear how the City identified the owners of the property "in" or "abutting" the closed portion of Halifax Drive.[5] The City's confusion evidently stems from the ambiguity contained in the above statutory language.

The interpretation of a statute is a matter of law for the court. *White v. McAllister,* Ky. 443 S.W.2d 541 (1969). When interpreting a statute, the court is bound to give it a reasonable interpretation and to accomplish the legislative purpose. *Marcinek v. Commonwealth ex rel. Marcum,* Ky.App., 999 S.W.2d 721 (1999). The ambiguous statutory language at issue is as follows: "all property owners in or abutting the public way or portion thereof to be closed."

When interpreting the above statutory language, we initially point out that "to be closed" should be read as modifying both "public way" and "portion thereof." Simply stated, we interpret subsection (2) as referring to owners of property that are in or abutting the public way to be closed *or* the portion of the public way to be closed. Under our interpretation, it would be unnecessary to give written notification to all property owners along a public way when only a portion thereof is to be closed; only those property owners that abut or are in the portion of the public way to be closed must receive notice.

We also view the terms "in" and "abutting" as ambiguous. It is a well established rule of statutory interpretation that words which have acquired a technical legal meaning should be accorded that meaning, while words which have not should be given their common meaning. *Commonwealth v. Wombles,* Ky., 346 S.W.2d 299 (1961); *Payton v. Norris,* 240 Ky. 555, 42 S.W.2d 723 (1931). Relative to public roads, the term "abutting" has acquired a technical legal meaning that denotes property which directly touches at a single point upon the public way. 39 Am. Jur.2d *Highways, Streets, and Bridges* § 202 (1999); *see also Riedling v. Harrod,* 298 Ky. 232, 182 S.W.2d 770 (1944); *Wessels Constr. and Dev. Co. v. Commonwealth,* 560 F.Supp. 25 (E.D.Ky.1983). Under KRS 82.405(2), the term "abutting" refers to property owners that directly touch upon a single point of the public way to be closed. These property owners are commonly located on either side of the public way to be closed or the portion thereof to be closed.

---

**5.** We are cognizant that "owners of property" and "property owners" cannot technically abut or be located in a public way. Rather, it is the "property" that "abuts" or is located "in" a public way. We utilize the terms "owners of property" and "property owners" so as to be consistent with the statutory language of KRS 82.405.

■ Unlike the term "abutting," the term "in" has not acquired such a technical legal meaning. We shall, therefore, use its common meaning: "located inside or within." *American Heritage Dictionary* 663 (New College ed.1981). Within the context of subsection (2), we interpret the term "in" as signifying owners of property that are located inside or within the public way to be closed or portion thereof to be closed. These property owners would generally be those holding utility easements located "within" the public way to be closed or portion thereof to be closed.[6]

■ In view of the forgoing, we interpret KRS 82.405(2) as requiring identification of, written notification to, and written consent of property owners that either: (I) directly touch upon a single point of the public way to be closed; (II) directly touch upon a single point of the portion of the public way to be closed; (III) are located within the public way to be closed; or (IV) are located within the portion of the public way to be closed.

■ Here, it is clear that only a portion of Halifax Drive was closed. This portion has been more particularly identified as a 15 × 80 foot strip upon which the gate was erected. Under these facts, only owners whose property directly touches upon a single point of the 15 × 80 foot closed portion of Halifax Drive or whose property is located within the 15 × 80 foot closed portion are entitled to written notice under KRS 82.405(2). We are, however, unable to discern from the record the identities of such property owners. As such, we must remand this action with directions that the circuit court identify these property owners and determine whether they received proper written notice and gave written consent under the terms of KRS 82.405(2). If the appropriate property owners received proper written notice and gave written consent, the circuit court should dismiss Worthington Fire Department's complaint.

In sum, we hold the City is not bound by § 14.2 of the Jefferson County Development Code nor is it bound by the decision of the Jefferson County Planning Commission under KRS 100.324(4). We also do not believe the City is required to obtain approval of the Jefferson County Fiscal Court pursuant to KRS 178.070, KRS 178.115, or KRS 178.116, to close a public way. Rather, we are of the opinion the City possesses the singular authority to effectuate a closure of Halifax Drive under KRS 82.405(1) and (2) and the City's legislative body made the required findings of fact thereunder. We, however, remand this action for a determination of the identity of the property owners under KRS 82.405(2) and whether such owners received proper written notice and gave written consent under KRS 82.405(2). If proper written notice was given and written consent was received, the circuit court thereupon should dismiss the complaint.

For the foregoing reasons, the opinion and order of the Jefferson Circuit Court is vacated, and this cause remanded with directions that the circuit court identify the owners of property that are in or abutting the closed portion of Halifax Drive and determine whether such owners received proper written notice and gave written consent under the terms of KRS 82.405(2).

ALL CONCUR.

---

6. It has been observed that an easement is "a property right or interest in land." *Illinois Central R.R. Co. v. Roberts,* Ky.App., 928 S.W.2d 822, 826 (1996); *see also* 25 Am. Jur.2d *Easements and Licenses* § 2 (1996).