**CAMPBELL COUNTY LIBRARY BOARD OF TRUSTEES,**
Appellant

v.

**Charlie COLEMAN; John P. Roth; and Erik Hermes, Appellees**

and

**Kenton County Library Board of Trustees, Appellant/Cross–Appellee**

v.

**Garth Kuhnhein, Appellee/Cross–Appellant**

NO. 2013–CA–000883–MR, NO. 2013–CA–000874–MR, NO. 2013–CA–001010–MR

Court of Appeals of Kentucky.

RENDERED: MARCH 20, 2015; 10:00 A.M.

Discretionary Review Denied by Supreme Court December 10, 2015

Briefs for Appellant, Campbell County Library Board of Trustees: Jeffrey C. Mando (argued), Louis D. Kelly, Covington, Kentucky.

Amici Curiae Brief for Kentucky Library Association; Kentucky Public Library Association; Friends of Kentucky Public Libraries, Inc.; General Federation of Women's Clubs Kentucky; and American Library Association: Mark R. Overstreet, Frankfort, Kentucky, Sheryl G. Snyder (argued), Chongyang Ge, Louisville, Kentucky, Virginia Hamilton Snell, Louisville, Kentucky.

Briefs for Appellees, Charlie Coleman, John P. Roth and Erik Hermes: Timothy J. Eifler, Stephen A. Sherman, Louisville, Kentucky, Brandon N. Voelker (argued), Cold Spring, Kentucky, Erica L. Horn, Sara J. Bishop, Lexington, Kentucky.

Briefs for Appellee/Cross–Appellant, Garth Kuhnhein: Timothy J. Eifler, Stephen A. Sherman, Louisville, Kentucky, Brandon N. Voelker (argued), Cold Spring, Kentucky, Erica L. Horn, Sarah J. Bishop, Lexington, Kentucky.

Briefs for Appellant/Cross–Appellee, Kenton County Library Board of Trustees: Michael W. Hawkins (argued), Cincinnati, Ohio, Mary Ann Stewart, Covington, Kentucky.

BEFORE: NICKELL, TAYLOR, AND THOMPSON, JUDGES.

## OPINION

TAYLOR, JUDGE:

At issue in this consolidated appeal from the Campbell and Kenton Circuit Courts is whether public libraries in Kentucky, created by petition pursuant to Kentucky Revised Statutes (KRS) 173.710 *et seq.*, may assess the library's ad valorem tax rate in accordance with KRS 132.023 (commonly referred to as House Bill 44) or pursuant to the provisions of KRS 173.790.

The Campbell County Library Board of Trustees (Campbell Board) brings Appeal No. 2013–CA–000883–MR from a May 13, 2013, Order of the Campbell Circuit Court holding that KRS 173.790 controlled any increase in the ad valorem tax rate imposed by the Campbell Board. The Kenton County Library Board of Trustees (Kenton Board) brings Appeal No. 2013–CA–000874–MR and Garth Kuhnhein brings Cross–Appeal No. 2013–CA–001010–MR from an April 11, 2013, Summary Judgment of the Kenton Circuit Court also concluding that KRS 173.790 controlled any increase in the ad valorem tax rate imposed by the Kenton Board. For the reasons stated, we reverse and remand Appeal Nos. 2013–CA–000883–MR and 2013–CA–000874–MR and affirm Cross–Appeal No. 2013–CA–001010–MR.

## BACKGROUND—CAMPBELL COUNTY

In 1978, the Campbell County Library was created by petition of the voters as a public library district pursuant to KRS 173.710–173.800. In accordance with KRS 173.720, the petition was signed by more than 51 percent of Campbell County voters who voted in the last general election, and the petition was filed with the Campbell County Fiscal Court. The petition set forth an ad valorem tax rate of $0.30 per thousand dollars of assessed property value as funding for the Campbell County Library District. Since that time, the

Campbell County Library District's ad valorem tax rate has been calculated pursuant to the provisions of KRS 132.023, and in 2011 the tax rate was $0.457 per thousand dollars of value.

On January 19, 2012, Charlie Coleman, John P. Roth, and Erik Hermes (collectively referred to as appellees/taxpayers), as landowners in Campbell County, filed a declaratory judgment action against the Campbell Board seeking class action certification in the Campbell Circuit Court. Appellees/taxpayers claimed, inter alia, that the Campbell Board improperly increased the ad valorem tax rate in violation of KRS 173.790 and sought a refund of overpaid taxes. Appellees/taxpayers argued that the Campbell Board erroneously utilized KRS 132.023 to authorize the increase in the ad valorem tax rate. Appellees/taxpayers maintained that the Campbell Board should have utilized KRS 173.790 to impose an increase in the ad valorem tax rate and that such increase could only be obtained by petition of the voters. As the Campbell Board increased the ad valorem tax rate without complying with KRS 173.790, appellees/taxpayers sought a refund of "overpaid" ad valorem taxes collected by the Campbell Board. Conversely, the Campbell Board maintained that the ad valorem tax rate was correctly assessed pursuant to KRS 132.023 and that appellees/taxpayers are not entitled to relief.

Both parties filed motions for summary judgment upon the legal issue of whether KRS 132.023 or KRS 173.790 controlled the ad valorem tax rate. By order granting summary judgment entered April 1, 2013, the circuit court held that KRS 173.790 controlled as the more specific statute. The court stated:

> Where two statutes are in apparent conflict, and their inconsistencies cannot be reconciled, "the one containing express

and positive language relating to the particular subject should take precedence over a provision dealing with a matter in general terms." *Commonwealth v. Martin*, 777 S.W.2d 236 (Ky. App.1989). Moreover, it is the Court's duty to harmonize the law so as to give effect to both statutes. *Allen v. McClendon*, 967 S.W.2d 1 (Ky.1998). KRS 173.790 specifically refers to the "special ad valorem tax rate for the maintenance and operation of a public library district." KRS 132.023 and KRS 132.010 refer generally to taxing districts. Since KRS 173.790 specifically addresses the procedure for increasing or decreasing the Library Tax Rate, it must control over the general provisions of KRS Chapter 132. This interpretation gives effect to both statutes and prevents KRS 173.790 from being meaningless.

Upon motion of the Campbell Board, the circuit court designated the April 1, 2013, summary judgment final and appealable per Kentucky Rules of Civil Procedure (CR) 54.02, by order entered May 13, 2013. The Campbell Circuit Court appeal followed.

*BACKGROUND—KENTON COUNTY*

In 1967, the Kenton County Public Library was created by petition of the voters as a public library district pursuant to KRS 173.710–173.800. In accordance with KRS 173.720, the petition was signed by more than 51 percent of Kenton County voters who voted in the last general election, and the petition was filed with the Kenton County Fiscal Court. The petition set forth an ad valorem tax rate of $0.60 per thousand dollars of assessed property value as funding for the Kenton County Library District. Since 1979, the Kenton County Library District's ad valorem tax rate has been calculated pursuant to KRS 132.023, and in 2011 the ad valorem tax

rate had increased to approximately $1.13 per thousand dollars of assessed real property value.

On January 20, 2012, Garth Kuhnhein and "others similarly situated," (collectively referred to as appellees/taxpayers) as property owners in Kenton County, filed a declaratory judgment action against the Kenton Board seeking class action certification in the Kenton Circuit Court. Kuhnhein claimed, *inter alia,* that the Kenton Board improperly increased the ad valorem tax rate in violation of KRS 173.790 and sought a refund of overpaid taxes. Kuhnhein maintained that the Kenton Board erroneously utilized KRS 132.023 to increase the ad valorem tax rate. Kuhnhein argued that the Kenton Board should have utilized KRS 173.790 to impose an increase in the ad valorem tax rate and that such increase could only be obtained by petition of the voters. As the Kenton Board increased the ad valorem tax rate without complying with KRS 173.790, Kuhnhein sought a refund of "overpaid" ad valorem taxes collected by the Kenton County Library District. Conversely, the Kenton Board maintained that the ad valorem tax rate was correctly assessed pursuant to KRS 132.023 and that Kuhnhein was not entitled to relief.

Both parties filed motions for summary judgment. In its summary judgment, the circuit court concluded that KRS 173.790 controlled as the more specific statute concerning imposition of an ad valorem tax rate and that the Kenton Board improperly relied upon KRS 132.023 to increase the ad valorem tax rate. However, the circuit court denied Kuhnhein a refund for "overpaid" ad valorem taxes from the Kenton County Library District. The court designated the summary judgment as final and appealable per CR 54.02. The Kenton Circuit Court appeal and cross-appeal followed.

## STANDARD OF REVIEW

Summary judgment is appropriate where there exists no material issue of fact and movant is entitled to judgment as a matter of law. CR 56; *Steelvest, Inc. v. Scansteel Service Center, Inc.,* 807 S.W.2d 476 (Ky.1991). However, the facts in these cases are not in dispute. Accordingly, resolution of these appeals looks to the interpretation, construction, and application of KRS 132.023, KRS 173.790, and KRS 65.190, which is a question of law. *See City of Worthington Hills v. Worthington Fire Prot. Dist.,* 140 S.W.3d 584 (Ky.App. 2004). We thus review the rulings below *de novo. See 3D Enterprises Contracting Corp. v. Louisville and Jefferson County,* 174 S.W.3d 440 (Ky.2005).

## ANALYSIS

We begin our analysis by reviewing the relevant legislative history as concerns the creation and funding of library taxing districts formed by petition in Kentucky, and subsequent legislation related thereto.

In 1964, the General Assembly enacted KRS 173.710–173.800 entitled "Library Districts Formed by Petition." Pursuant to KRS 173.720, a library district could be formed by a petition setting forth the ad valorem rate and signed by 51 percent of the voters in a county who voted in the last general election. The ad valorem tax rate is required to be set forth in the petition. KRS 173.790 provided that the ad valorem tax rate could be only increased or decreased by a petition signed by 51 percent of the voters.

In 1965, the Supreme Court rendered *Russman v. Luckett,* 391 S.W.2d 694 (Ky. 1965). In *Russman,* 391 S.W.2d 694, the Supreme Court held that real property and personal property must be assessed at 100 percent of fair cash value for tax purposes. The Court observed that real prop-

erty and personal property had been previously assessed at only 12½ to 33 percent of fair cash value. The Supreme Court recognized that "immediate compliance" with its decision was impossible but mandated that all property be assessed at 100 percent of fair market value beginning January 1, 1966. *Id.* at 699.

Because of the *Russman* decision, property owners in Kentucky were facing the prospect of dramatically increased ad valorem taxes. *See id.* To prevent the imposition of such increased property taxes, the General Assembly passed KRS Chapter 132 (commonly referred to as the "rollback law") in special session, and its provisions became effective December 16, 1965. The "rollback law" is discussed in detail in *Rose v. Council for Better Education, Inc.,* 790 S.W.2d 186, 195 (Ky.1989).

Under KRS 132.023,[1] a taxing district could not impose ad valorem taxes in excess of the "compensating tax rate":

(1) Notwithstanding any statutory provisions to the contrary, for 1966 and for all subsequent years, no taxing district, other than the state, counties, school districts, and cities, shall levy a tax rate which exceeds the compensating tax rate defined in KRS 132.010.

And, the compensating tax rate was defined as:

(6) "Compensating tax rate" means the rate which, rounded to the next higher one-tenth of one cent per one hundred dollars of assessed value and applied to the 1966 assessment of the property subject to taxation by a taxing district for the 1965 tax year, produces

an amount of revenue approximately equal to that produced in 1965.

KRS 132.010(6).[2]

Thereafter, in 1972, KRS 132.010(6) and KRS 132.425 were amended to permit increases in revenue based upon inflation of assessed property values or net assessment growth. KRS 132.010(6). *See Rose,* 790 S.W.2d 186. By this amendment, revenues from ad valorem taxes increased correspondingly to increases in property value assessments.

The 1972 amendments led to dramatic and unexpected increases in ad valorem taxes, so the General Assembly again amended KRS Chapter 132 by special session in 1979. In the special session, the General Assembly removed inflationary property value increases from the calculation of the compensating tax rate. Under the 1979 amendment, commonly referred to as House Bill 44, a taxing district could increase revenue from taxes by 4 percent or less per year over the compensating tax rate without triggering a possible voter recall referendum. The applicable provision of KRS 132.023[3] read:

(4)(a) That portion of a tax rate levied by an action of a tax district, other than the state, counties, school districts, cities and urban-county governments which will produce revenue from real property, exclusive of revenue from new property, more than four percent (4%) over the amount of revenue produced by the compensating tax rate defined in KRS 132.010 from real property shall be subject to a recall vote or reconsideration by the taxing district, such as the case may be, as provided for in Section 8 of

---

**1.** We quote the version of Kentucky Revised Statutes (KRS) 132.023 effective December 16, 1965.

**2.** We quote the version of KRS 132.010 effective December 16, 1965.

**3.** We quote the version of KRS 132.023(4)(a) effective on February 13, 1979; presently, this subsection is codified at KRS 132.023(3)(a).

this Act, and shall be advertised as provided for in paragraph (b) of this subsection.

Under KRS 132.023(4)(a), a taxing district could increase revenue from ad valorem taxes up to 4 percent without triggering a reconsideration by the taxing district or voter recall.

In 1984, the General Assembly enacted KRS 65.180–65.190 entitled "Taxing Districts." Under the statutory provisions, the Legislature set forth uniform procedures for the creation of taxing districts. Specifically, KRS 65.182 states "[e]xcept as otherwise provided by state law, the sole methods of creating a taxing district shall be in accordance" with the provisions of KRS 65.180–65.190. Simultaneously, the statutory provisions relating to formation of library districts by petition were also amended.[4] In particular, the procedures for creating a library district by petition were deleted from KRS 173.720. And, KRS 173.720 was amended to provide that library "[d]istricts organized pursuant to the provisions of this section prior to July 13, 1984[,] shall be governed by the provisions of KRS 173.710 to 173.800."[5] However, § 6 of House Bill 36, codified at KRS 65.190, provided that the provisions of House Bill 36 "shall not be construed as limiting or changing the power or organization of taxing districts created prior to July 13, 1984." As a result of these 1984 amendments, library districts are no longer formed by petition under KRS 173.720.

We pause at this stage of our analysis to note that the parties in both cases have done a most thorough and outstanding analysis in the presentation of their respective positions and are to be so com-

mended. This Court is presented with a legislative quandary for which there exists persuasive authority on both sides of the issue to support the parties' respective positions.

For example, the Kenton and Campbell Boards aptly note that since the passage of House Bill 44 in 1979, all library districts in Kentucky, whether formed by petition or ballot, have been assessing their ad valorem tax rates in accordance with KRS 132.023, and at the direction of the Executive Branch of state government. The Kentucky Department for Library and Archives has been instructing public library districts to set the ad valorem tax rates in accordance with the compensating tax rate and KRS 132.023 for over thirty years, with the Kentucky Department of Revenue computing and providing the library districts with the compensating tax rate annually.

And the respective appellee/taxpayers in both cases correctly point out that the Kentucky Attorney General has issued opinions on at least three or more occasions, including OAG 80–570, OAG 81–257 and OAG 84–141, after the passage of House Bill 44, that recognized or at least inferred that the tax rates for library districts created by petition are governed by KRS Chapter 173.790. Appellees/taxpayers further emphasize that in the passage of House Bill 36 in 1984, the General Assembly intended for library districts created prior to July 13, 1984, to be exclusively subject to the tax provisions of KRS 173.790. The logic of their argument is persuasive, were it not for the existence of

---

4. The creation of KRS Chapter 65 and amendments to KRS Chapter 173 were included in House Bill 36 (1984 Ky. Acts Ch. 100) in the 1984 legislation.

5. The Kenton County Library District was formed by petition in 1967, and the Campbell County Library District was formed by petition in 1978; thus, both come within the ambit of KRS 173.710–173.800.

other statutes applicable to the issue in dispute.

As concerns the Attorney General opinions relied upon by appellees/taxpayers, these opinions are persuasive but certainly are not binding precedents on this Court. *York v. Commonwealth*, 815 S.W.2d 415 (Ky.App.1991). Additionally, in regard to House Bill 36 and the 1984 Amendment to KRS Chapter 173, we are also mindful, as previously noted in this opinion, that in the same legislation, the General Assembly passed § 6 of House Bill 36, which is a conflicting statutory provision that clearly states that all taxing districts, which would include library districts, created prior to July 13, 1984, would not have their existing powers or organization affected by House Bill 36. *See* KRS 65.190.

There is no dispute in this case that KRS 132.023 and KRS 173.790, on their face, are in conflict. At the risk of being accused of judicial activism, this Court must now determine which statutory provision controls, or in the alternative, determine whether these statutes can be harmonized together and applied to the legal issues raised in these cases. The case simply boils down to one of statutory construction.

In construing statutes, the Kentucky Supreme Court has held that courts must give effect to the intent of the General Assembly. *Maynes v. Commonwealth*, 361 S.W.3d 922 (Ky.2012). That intent is derived from the language of the statute as defined by the General Assembly or in the context of the subject matter at issue. *Shawnee Telecomm. Res., Inc. v. Brown*, 354 S.W.3d 542 (Ky.2011). And, courts must presume that the General Assembly intended for a statute to be construed as a whole and to be harmonized with all related statutes. *Id.*

The harmonization of statutes looks to interpreting or construing seemingly inconsistent statutes like we are faced with in KRS 132.023 and KRS 173.790. Additionally, in harmonizing these statutes, we are cognizant of KRS 65.190. We are thus tasked with adopting an interpretation or construction that will give effect to all of the statutes at issue which also advances legislative intent. *See Combs v. Hubb Coal Corp.*, 934 S.W.2d 250 (Ky.1996); *AK Steel Corp. v. Commonwealth*, 87 S.W.3d 15 (Ky.App.2002). And, this Court must remain aware of the purposes for which the statutes were intended to accomplish. *City of Owensboro v. Noffsinger*, 280 S.W.2d 517 (Ky.1955).

KRS 173.790 was initially passed in 1964 and was included in a statutory section entitled "Library Districts Formed by Petition." Upon its passage, there is little doubt that the General Assembly intended KRS 173.790 to be solely utilized to increase the ad valorem tax rate for a library district formed by petition. Soon thereafter in 1965, the Supreme Court rendered *Russman*, 391 S.W.2d 694. Because of *Russman*, 391 S.W.2d 694, all ad valorem tax rates would dramatically increase because property was to be valued at 100 percent of its fair cash value. It is obvious that *Russman*, 391 S.W.2d 694, would have increased ad valorem library taxes as well. In order to prevent such increase in ad valorem taxes, the General Assembly, via an extraordinary session, passed KRS Chapter 132 in 1965. And, KRS 132.023 specifically capped the ad valorem tax rate imposed by taxing districts at the compensating tax rate. At that time, it was the legislative purpose of KRS Chapter 132 to counter the dramatic increase in ad valorem taxes precipitated by *Russman*, 391 S.W.2d 694. Shortly thereafter in 1966, Kentucky's highest court recognized that library districts created under KRS Chapter 173 were indeed taxing districts creat-

ed by statutory authority. *Boggs v. Reep*, 404 S.W.2d 24 (Ky.1966).

Considering the purpose of KRS Chapter 132, and its direct focus on taxing districts, other than governmental bodies and school districts, we believe it was the legislative intent that KRS 132.023 apply to library taxing districts formed by petition under KRS 173.720. While appellees/taxpayers argue that these provisions should only apply to library districts created by ballot and not petition, that interpretation defies logic and common sense given the circumstances that existed when the statute was originally passed in 1965. KRS Chapter 132 was passed to offset the dramatic increase in ad valorem taxes that were likely to occur after *Russman*, 391 S.W.2d 694, including increases in ad valorem taxes for a library district formed by petition. Thus, we construe KRS 132.023 as applicable to a library taxing district formed by petition, as there has been no subsequent legislative action to the contrary.

When KRS 132.023(1) was amended in 1979 by House Bill 44, the General Assembly clearly intended that its provisions would apply to all existing taxing districts other than governmental entities and school districts. And, the Executive Branch of government, charged with carrying out the laws passed by the General Assembly, also understood that all library districts were affected by the provisions of House Bill 44 and has proceeded accordingly thereon since 1979.

Thus, as to a library district formed by petition, we interpret KRS 132.023(1) as generally operating to cap the ad valorem tax rate of said library district at the compensating tax rate. And, KRS 132.023(3)(a), formerly KRS 132.023(4)(a), permits an increase of up to 4 percent above the revenue produced by the compensating tax rate. A library taxing district formed by petition may set the ad valorem tax rate each year at the compensating tax rate or at a rate that would allow up to 4 percent increase in revenue above the compensating tax rate as permitted under KRS 132.023.

However, our reconciliation of these statutes does not end here. We also construe KRS 173.790 to be concomitantly applicable as a method available to a library taxing district seeking to increase the revenue from ad valorem taxes over 4 percent of the revenue generated from the compensating tax rate as permitted by KRS 132.023. If a library taxing district formed by petition seeks to increase revenue from ad valorem taxes above 4 percent of the revenue generated from the compensating tax rate, the specific procedure outlined in KRS 173.790 is then triggered and the tax rate or revenue from ad valorem taxes may only be increased by petition of the voters.[6]

In sum, we hold that KRS 132.023 and KRS 173.790 are both applicable to ad valorem taxing rates of a library taxing district formed by petition under KRS 173.720 and can be harmoniously interpreted to complement each other. KRS 132.023 generally controls the ad valorem tax rate assessed by a library taxing district formed by petition; however, KRS 173.790 is triggered if the library seeks to increase revenue from ad valorem taxes above 4 percent of the revenue generated from the compensating tax rate as set

---

**6.** Thus, the provisions of KRS 132.023(3) concerning reconsideration by the taxing district or voter recall are inapplicable to library districts formed by petition. Rather, if revenue from ad valorem taxes is increased above 4 percent as set forth in KRS 132.023(3), the procedures of KRS 173.790 are triggered and the increase must be approved by petition of the voters.

forth in KRS 132.023(1) and (3). Our construction of KRS 132.023 and KRS 173.790 gives effect to both statutes and honors what we believe the General Assembly intended. The appellees/taxpayers argument, relied upon by the circuit courts below, that the 1984 amendment to KRS Chapter 173 reflects legislative intent to the contrary for library districts created by petition, is clearly refuted by KRS 65.190, also passed in 1984. To follow the literal interpretation of the 1984 legislation suggested by appellees/taxpayers would not be compatible with the object and purpose of the entire legislative scheme for taxing districts, especially as concerns library districts. And, the General Assembly's silence on this issue since 1984 buttresses our conclusions in the harmonization of these statutes. Since this Court has concluded that the statutes can be harmonized as stated, there is no necessity in addressing the parties' arguments regarding which is the more specific statute versus the more comprehensive statute.

Finally, in the absence of any legislative action over the past thirty-plus years that would alter our opinion today, we are reminded by former Chief Justice Palmore that "[w]hen all else is said and done, common sense must not be a stranger in the house of the law." *Cantrell v. Ky. Unemployment Ins. Comm'n*, 450 S.W.2d 235, 237 (Ky.1970). Chief Justice Palmore was also a member of the Kentucky Supreme Court that rendered a unanimous opinion in 1978 in *Wayne Public Library Board of Trustees v. Wayne County Fiscal Court*, 572 S.W.2d 858 (Ky.1978). In *Wayne*, the Supreme Court addressed a second attack on the constitutionality of the provisions of KRS Chapter 173 as pertains to the petition method of forming public library districts in Kentucky. As noted, that legislation was enacted in 1964. In upholding the statutes, the Supreme

Court in *Wayne* noted that "[w]hen over two-thirds of the library districts in Kentucky are the children of these statutes, there can be no doubt that many important and valuable rights, obligations and services have vested." *Id.* at 859. That same logical common sense approach is also applicable to these cases now on appeal, notwithstanding that this Court has harmonized the statutes at issue. The record in this case reflects that eighty library districts across Kentucky, created by petition under KRS Chapter 173, who have followed the tax provisions of KRS 132.023, would be adversely affected if the decisions of the Campbell and Kenton Circuit Courts were to stand. For over thirty years, without protest or challenge, the library districts created by petition have acted in good faith and conducted their affairs in accordance with the directions of the Executive Branch, which was charged by law to implement the applicable statutes in question. While our opinion today stands on the harmonization of these statutes, based on our interpretation of legislative intent, we believe the ultimate recourse for statutory change lies in the General Assembly, not the courts.

Accordingly, we hold that the Campbell and Kenton Circuit Courts erred as a matter of law by concluding that KRS 132.023 was inapplicable to library districts formed by petition and erred by rendering the respective summary judgments so concluding. We hold that KRS 132.023 and KRS 173.790 are both applicable to library districts formed by petition and can be harmonized in their application as set out in this Opinion.

For the foregoing reasons, Appeal Nos. 2013–CA–000883–MR and 2013–CA–000874–MR are reversed and remanded for proceedings consistent with this Opin-

ion, and Cross–Appeal No. 2013–CA–001010–MR is affirmed as being moot.

ALL CONCUR.